1  Juanita R. Brooks (SBN 75934)
   Jason W. Wolff (SBN 215819)
2  Seth M. Sproul (SBN 217711)
   Thomas N. Millikan (SBN 234430)
3  FISH & RICHARDSON P.C.
   12390 El Camino Real
4  San Diego, CA 92130
   Telephone: (858) 678-5070
5  Facsimile: (858) 678-5099

6  Attorneys for Defendants
   DATALLEGRO, INC. and STUART FROST
7

8              UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10 CARY A. JARDIN,                    Case No. 08-CV-1462 IEG (RBB)

11         Plaintiff,                 **MEMORANDUM OF POINTS AND
                                      AUTHORITIES IN SUPPORT OF
12     v.                             DEFENDANTS' MOTION TO STRIKE
                                      PORTIONS OF PLAINTIFF'S FIRST
13 DATALLEGRO, INC. and STUART FROST, AMENDED VERIFIED COMPLAINT
                                      AND TO DISMISS CERTAIN COUNTS
14         Defendants.                AGAINST STUART FROST AND
                                      DATALLEGRO, INC.**
15
                                      [DEMAND FOR JURY TRIAL]
16
                                      **Date:  November 7, 2008
17                                    Time:  10:30 a.m.
                                      Place: Courtroom 1, 4th Floor**
18
                                      **Chief Judge Irma E. Gonzalez**
19

20

21

22

23

24

25

26

27

28

                                      Case No. 08-CV-01462-IEG (RBB)

## I. INTRODUCTION

The claims by Plaintiff Cary A. Jardin ("Mr. Jardin") against defendants DATAllegro, Inc. ("DATAllegro") and Stuart Frost ("Mr. Frost") (collectively, "Defendants") are without merit. As their forthcoming Answer and Counterclaims will show, Defendants deny there is any infringement of Mr. Jardin's patent and will further allege, among other things, that the patent is invalid and should never have issued.

Moreover, Mr. Jardin has alleged that Mr. Frost improperly used confidential information of Mr. Jardin. These allegations are baseless and Mr. Frost is eager for the opportunity to clear his name. In any event, these allegations should never have been pled because they are barred under a settlement agreement and mutual release executed by Mr. Jardin, XPrime, Inc. ("XPrime") (the predecessor in interest to the patent-in-suit) and Mr. Frost in 2003.

Defendants seek the following by way of this Motion:

First, Mr. Jardin's allegations that Mr. Frost engaged in misconduct during his brief employment with XPrime should be stricken under Rule 12(f) of the Federal Rules of Civil Procedure because they are barred under the express terms of the comprehensive mutual release included in the settlement agreement that Mr. Jardin, XPrime and Mr. Frost entered into in 2003 (the "Settlement Agreement").

Second, Counts I and II asserted against Mr. Frost as an individual should be dismissed under Rule 12(b)(6) because the claims are barred under the Settlement Agreement and Mr. Jardin has not alleged any facts showing a basis for holding Mr. Frost individually liable for the alleged patent infringement.

Third, Mr. Jardin's Count II against DATAllegro for willful infringement (and of course against Mr. Frost should it not be dismissed for the second reason above) should be dismissed under Rule 12(b)(6) because it fails to allege sufficient facts necessary for a claim of willful infringement given that the factual allegations relating to Mr. Frost's dealings with XPrime are barred by the Settlement Agreement.

## II. BACKGROUND

Mr. Jardin's First Amended Verified Complaint ("Complaint") alleges that Mr. Frost was employed as the CEO of XPrime for a very brief period of time in 2003. [Complaint ¶ 9.] In fact, due to immediate differences of opinion between Mr. Jardin and Mr. Frost regarding operation of the company, Mr. Frost parted ways with XPrime and Mr. Jardin *after less than two weeks*. Mr. Jardin, XPrime and Mr. Frost settled all matters related to Mr. Frost's brief tenure at the company with a formal settlement agreement and mutual release executed in July of 2003. [Declaration of Seth M. Sproul, Exhibit 1 ("Settlement Agreement") (filed under seal).] The Settlement Agreement includes a comprehensive, mutual release pursuant to which Mr. Frost, XPrime, and "XPrime Affiliates" (defined to include Mr. Jardin individually) expressly surrendered "all claims related in any way to the transactions or occurrences" connected to Mr. Frost's involvement with XPrime. [*Id*. ¶ 2.1 (filed under seal).] Mr. Jardin founded XPrime and was an officer, director and a principal stockholder at the time of the Settlement Agreement. [Complaint ¶ 9 (referring to "Jardin's company XPrime")] Mr. Jardin signed the Settlement Agreement on behalf of XPrime and was a direct beneficiary of the mutual release and other provisions contained therein. [*Id.*] Complying with his obligations under the Settlement Agreement, Mr. Frost returned all materials previously provided to him by XPrime and thereafter had no further dealings with XPrime or Mr. Jardin. Mr. Jardin did not have any involvement with DATAllegro.

As the face of the patent-in-suit shows, XPrime did not file the '874 patent at issue in this lawsuit until March 23, 2004, long after Mr. Frost separated from XPrime and the parties had entered into the Settlement Agreement.[1] [Complaint, Exhibit 1.] The '874 patent ultimately issued on February 13, 2007. [*Id*.] At some point, XPrime went defunct, but not before XPrime allegedly assigned the patent in-suit to Mr. Jardin.

---

[1] On January 16, 2003, Mr. Jardin filed two patent applications allegedly related in part to the '874 patent, but Mr. Jardin abandoned those patent applications after the Patent Office determined that they were fatally deficient. Specifically, the Patent Office concluded that, among other things: (1) Mr. Jardin was improperly attempting to patent abstract ideas; (2) Mr. Jardin failed to adequately describe the alleged invention (suggesting that Mr. Jardin did not have possession of the alleged invention at the time he filed the '504 patent application); and (3) Mr. Jardin failed to disclose the best mode for carrying out the alleged invention of the '811 patent application.

1         In July 2008, it was publicly announced that Microsoft would acquire DATAllegro. Shortly thereafter, at a crucial point in the closing of the sale, Mr. Jardin's lawyers appeared at DATAllegro's headquarters and threatened to bring a lawsuit against Mr. Frost and DATAllegro. They implied that Mr. Jardin would consider dropping the matter in exchange for a large payment, but refused to provide any details regarding the threatened lawsuit.  DATAllegro and Mr. Frost rejected Mr. Jardin's demand and shortly thereafter Mr. Jardin filed this lawsuit in which he alleges, among other things, facts and claims related to the transactions and occurrences between Mr. Frost and XPrime in 2003.

        Mr. Jardin alleges that Mr. Frost was the CEO of XPrime in 2003, [Complaint at ¶ 9], that Mr. Frost had access to "confidential information and documents from Jardin and other XPrime employees," [*id.* at 10], that Mr. Frost attempted to convert Mr. Jardin's inventions by filing his own patents, [*id.* at 11], and that once at DATAllegro, Mr. Frost used and incorporated Mr. Jardin's intellectual property into DATAllegro's products.  The Complaint, however, makes no connection between whatever Mr. Frost is alleged to have had access to in 2003 (which is not identified) and the patent-in-suit, which was not filed until 2004, long after Mr. Frost separated from XPrime.

        On their face, Mr. Jardin's claims of infringement and particularly his willful infringement allegations against Mr. Frost are firmly based on the facts and circumstances surrounding Mr. Frost's brief relationship with XPrime in early 2003, more than five years before this suit was filed.  Paragraph 18 alleges that Mr. Frost (and DATAllegro) had access to and copied Mr. Jardin's technology. Paragraph 19 alleges again that Mr. Frost had access to Mr. Jardin's confidential information during his employment, and paragraph 20 alleges that Mr. Frost used this information in products sold by his new company, DATAllegro.  Paragraph 21 explicitly alleges that Mr. Frost's (and DATAllegro's) infringement is willful because of his "intentional copying" of Mr. Jardin's confidential information, even though in 2003 the parties resolved any differences they had by entering into the Settlement Agreement, and, moreover, the patent-in-suit was not filed until almost one year after Mr. Frost separated from XPrime.

- 3 -                                Case No. 08-CV-01462-IEG (RBB)

## III. PARAGRAPHS 9-12 AND 18-20 SHOULD BE STRICKEN FROM THE COMPLAINT BECAUSE THE SETTLEMENT AGREEMENT BETWEEN MR. FROST AND XPRIME PRECLUDES ACCUSATIONS AND CLAIMS AGAINST MR. FROST

Rule 12(f) allows for the removal of irrelevant and scandalous material. "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Proc. 12(f); *Wailua Associates v. Aetna Cas. and Sur. Co.*, 183 F.R.D. 550, 553 (D.Haw. 1998). "The rationale behind granting motions to strike is to 'avoid ... prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegation any unnecessary notoriety.'" *Wailua Associates*, 183 F.R.D. at 553 (*citing 5A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1382, at 715 (2d ed.1990)*).

In 2003, Messrs. Frost and Jardin[2] settled and resolved all issues that relate in any way to Mr. Frost's relationship with XPrime. [*See* Settlement Agreement (Exh. 1) § 2.1] The mutual release in the Settlement Agreement was broad, and was intended to be the final word on all issues related, directly or indirectly, in any way to the facts and circumstances surrounding Mr. Frost's very brief involvement with XPrime. [*Id.*; *see also* ¶ 2.2 and ¶ 3.]

Contravening the plain language of the release, paragraphs 9-12 and 18-20 of Mr. Jardin's Complaint allege facts that relate directly to Mr. Frost's relationship with XPrime. In light of the Settlement Agreement and the release therein, these allegations have been previously dealt with and resolved by the parties, and should be stricken pursuant to Rule 12(f). Furthermore, because these allegations are precluded by the Settlement Agreement from being offered into evidence, they are "impertinent" under Rule 12(f). *See Wailua Assoc.*, 183 F.R.D. at 554 ("An allegation is "impertinent" when it is irrelevant and could not be put into evidence between the parties.") Finally, these paragraphs should be stricken because they exist only to add scandalous and baseless accusations to disparage Mr. Frost, which is also precluded by the Settlement Agreement. [*See* Settlement Agreement (Exh. 1) ¶ 4.]

---

[2] Mr. Jardin is bound by the settlement agreement because he is named explicitly in the mutual release. [Settlement Agreement (Exh. 1) § 2.1.] Mr. Jardin also signed the agreement on behalf of XPrime, he was the founder of XPrime, and he was an officer, director and a principal shareholder at the time of the Settlement Agreement. [*Id.* at 6.]

## IV. THE CLAIMS AGAINST MR. FROST SHOULD BE DISMISSED

All of the claims asserted against Mr. Frost as an individual should be dismissed under Rule 12(b)(6) because the claims are barred under the Settlement Agreement.

A settlement agreement will bar claims that have already been resolved. *See Petro-Ventures, Inc. v. Takessian*, 967 F.2d 1337, 1342-43 (9th Cir. 1992) (affirming dismissal of claims by district court in Southern District of California, holding that a settlement agreement that unambiguously conveyed intent of parties to release all known and unknown claims and signed in commercial context barred all subsequent claims arising out of the transaction); *Skrbina v. Fleming Cos.*, 45 Cal. App. 4th 1353, 1366 (1996) (In general, a written release extinguishes any obligation covered by the release's terms, provided it has not been obtained by fraud, deception, misrepresentation, duress, or undue influence."); *see also Bardin v. Lockheed Aeronautical Systems Co.*, 70 Cal. App. 4th 494, 732 (1999). Courts view settlement agreements as final dispositions, and as in collateral estoppel, will not adjudicate issues that have already been resolved. *See Petro-Ventures,* 967 F.2d at 1343. Judicial efficiency and fairness dictate that the final resolution of settlement agreements be enforced.

Mr. Jardin's claims against Mr. Frost should be dismissed because they arise directly from the same set of facts and circumstances that were the subject of the mutual release in the Settlement Agreement. Mr. Jardin has thus not pled a sufficient factual basis upon which to make a non-released claim against Mr. Frost personally for alleged patent infringement.

The Settlement Agreement bars Mr. Jardin expressly and emphatically releases and discharges Mr. Frost from all claims related in any way to the transactions or occurrences between them, and moreover bars claims even though the patent-in-suit had not yet been filed at the time of the execution of the agreement. The Ninth Circuit in *Petro-Ventures* explained that, "where the parties have negotiated at arms length and the intent of the settlement agreement is clearly to release all claims, ***known or unknown***, it would be detrimental to allow a party to assert claims that should have been covered by the agreement." 967 F.2d at 1339 (emphasis added). Moreover, the Settlement Agreement goes on to expressly authorize Mr. Frost to freely to use information which is generally known in the trade or industry and his own skill and knowledge, know-how and

experience to whatever extent and in whichever way he wishes in the future. [Settlement Agreement § 5.1]

## V. MR. JARDIN'S CLAIM AGAINST MR. FROST AND DATALLEGRO FOR WILLFUL INFRINGEMENT SHOULD BE DISMISSED

Additionally, Mr. Jardin's Count II against Mr. Frost and DATAllegro for willful infringement should be dismissed under Rule 12(b)(6) because it fails to allege any facts necessary for a count of willful infringement, particularly given that the factual allegations relating to Mr. Frost's dealings with XPrime are barred by the Settlement Agreement.

The Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955 (2007), requires Mr. Jardin to allege sufficient facts "to raise a right to relief above the speculative level." *Id.* at 1965. Mr. Jardin cannot rely on "a formulaic recitation of the elements of a cause of action," but instead must plead facts sufficient to "raise a reasonable expectation that discovery will reveal evidence" supporting the claim. *Id.*

Mr. Jardin's burden to plead willfulness-related facts is described in the Federal Circuit's *en banc* decision in *In re Seagate*, in which it established a heightened standard for proving willfulness. *In re Seagate*, 497 F.3d 1360 (Fed. Cir. 2007). In *Seagate*, the court abolished the old "affirmative duty of due care" previously imposed on those with mere notice of a patent. *Id.* at 1371. Consequently, no longer can a patentee rely on mere notice of a patent to allege willful infringement and shift the focus to the accused infringer's conduct. Instead, a finding of willfulness "requires at least a showing of objective recklessness," which means that "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id.* Moreover, once this objective standard is satisfied, "the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Id.*

Taking the pleading requirements of *Bell Atlantic* together with the substantive requirement of *Seagate*, Mr. Jardin's complaint fails to state a claim for willfulness, particularly given that the allegations regarding copying in 2003 should be stricken and dismissed under Rule

12(b)(6).  Apart from his allegation that Defendants had notice of the '874 Patent, Mr. Jardin bases his willfulness infringement claim entirely on allegations relating to Mr. Frost's alleged copying of Mr. Jardin's inventions in 2003, even though the patent-in-suit was not filed until 2004. [Complaint ¶¶ 18-21.]  These copying allegations are based upon Mr. Frost's alleged employment at XPrime in 2003, and thus are properly stricken as discussed above.  Without the copying allegation, Mr. Jardin does not – and cannot – make a sufficient willful allegation because merely alleging notice is no longer sufficient under *Seagate*.  *See Seagate*, 497 F.3d at 1371.

## VI.    CONCLUSION

For the reasons stated above, Defendants respectfully requests that the Court: (1) strike paragraphs 9-12 and 18-20 of Mr. Jardin's First Amended Verified Complaint pursuant to Rule 12(f); (2) dismiss all claims against Mr. Frost pursuant to Rule 12(b)(6); and (3) dismiss Mr. Jardin's Count II for willful infringement against Mr. Frost and DATAllegro pursuant to Rule 12(b)(6).

Dated:  September 22, 2008                          FISH & RICHARDSON P.C.

By:  s/Seth M. Sproul
Seth M. Sproul (SBN 217711)
E-mail:  sproul@fr.com
Attorneys for Defendants
DATALLEGRO, INC. AND STUART FROST

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on September 22, 2008 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civ LR 5.4(d).  Any other counsel of record will be served by U.S. mail or hand delivery.

By: s/Seth M. Sproul
Seth M. Sproul (SBN 217711)
Email:  sproul@fr.com
Attorneys for Defendants
DATALLEGRO, INC. AND STUART FROST

Memo ISO Motion to Strike 741.doc