Juanita R. Brooks (SBN 75934), brooks@fr.com
Jason W. Wolff (SBN 215819), wolff@fr.com
Seth M. Sproul (SBN 217711), sproul@fr.com
Thomas N. Millikan (SBN 234430), millikan@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Attorneys for Defendants
DATALLEGRO, INC. and STUART FROST

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARY A. JARDIN,<br><br>Plaintiff,<br><br>v.<br><br>DATALLEGRO, INC. and STUART FROST,<br><br>Defendants. | Case No. 08-CV-1462 IEG (RBB)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE SETTLEMENT AGREEMENT [FED. R. CIV. P. 56]**<br><br>**[DEMAND FOR JURY TRIAL]**<br><br>Date: December 22, 2008<br>Time: 10:30 a.m.<br>Place: Courtroom 1, 4th Floor<br><br>Chief Judge Irma E. Gonzalez |

## I. INTRODUCTION

The claims by Plaintiff Cary A. Jardin ("Mr. Jardin") against defendants DATAllegro, Inc. ("DATAllegro") and Stuart Frost ("Mr. Frost") (collectively, "Defendants") are without merit. As their forthcoming Answer and Counterclaims will show, Defendants deny there is any infringement of Mr. Jardin's patent and will further allege, among other things, that the patent is invalid and should never have issued.

Defendants filed a motion to strike and to dismiss (Dkt. # 23), which the Court has ordered the parties to re-brief as a motion for summary judgment because Defendants' motion relies upon a 2003 Settlement Agreement between Defendant Mr. Frost, XPrime, Inc. ("XPrime" – the predecessor in interest to the patent-in-suit), and Plaintiff Cary A. Jardin (Dkt. # 33).[1]

Other than the summary judgment law, the issues and controlling authority are unchanged. Defendants believe that the motion presents no genuine issues of material fact and that they are entitled to summary judgment as a matter of law.

Defendants seek the following by way of this Motion:

First, Mr. Jardin's allegations that Mr. Frost engaged in misconduct during his brief employment with XPrime should be stricken under Rules 12(f) and 56 of the Federal Rules of Civil Procedure because they are barred under the express terms of the comprehensive mutual release included in the settlement agreement that Mr. Jardin, XPrime and Mr. Frost entered into in 2003 (the "Settlement Agreement").

Second, Mr. Frost is entitled to summary judgment that Counts I and II are barred under the Settlement Agreement.

Third, Mr. Jardin's Count II against Mr. Frost and DATAllegro for willful infringement should be dismissed under Rule 12(b)(6) and Rule 56 because, if the first relief is granted, it fails to allege any facts necessary for willful infringement.

---

[1] Rather than re-file Defendants' supporting declaration, which was filed under seal and had a single exhibit (Exhibit 1), Defendants rely upon the earlier filed declaration here. *See* Dkt. # 25 (granting Defendants Motion to File Under Seal the Declaration of Seth M. Sproul in Support of Defendants' Motion to Strike Portions of Plaintiff's Complaint and to Dismiss Plaintiff's First Amended Verified Complaint and to Dismiss Certain Counts Against Stuart Frost and DATAllegro, Inc. That declaration will be referred to herein as "Declaration of Seth M. Sproul").

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where, as here, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When considering a motion for summary judgment, the court will view the facts in the light most favorable to the non-moving party, and draw any reasonable inferences in the non-moving party's favor. *Warren v. City of Carlsbad*, 58 F.3d 439, 443 (9th Cir. 1995). A material fact is one that would "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a dispute over a material fact to be "genuine," the evidence must be "such that a reasonable jury could return a verdict for the non-moving party." *Id.*

"Where the party moving for summary judgment does not bear the burden of proof at trial, it may show that no genuine issue of material fact exists by demonstrating that there is an absence of evidence to support the non-moving party's case." *Travelers Indem. Co. v. Walker & Zanger, Inc*., 221 F. Supp. 2d 1224, 1229 (S.D. Cal. 2002), quoting C*elotex*, 477 U.S. at 325. "The moving party is not required to produce evidence showing the absence of genuine issue of material fact, nor is it required to offer evidence negating the moving party's claim." *Id.*, citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S . 871, 885 (1990).

The nonmovant, Jardin, must come forward with competent evidence of a genuine fact issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party "may not rest upon the mere allegations or denials of the [] party's pleading, but... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324. Mere assertions of a factual dispute that are unsubstantiated by probative evidence will not preclude summary judgment. *S.A. Empresa v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982) ("A party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda.").

## III. STATEMENT OF UNDISPUTED FACTS

Mr. Jardin's First Amended Verified Complaint ("Complaint") alleges that Mr. Frost was employed as the CEO of XPrime for a very brief period of time in 2003. [Complaint ¶ 9.] In fact,

due to immediate differences of opinion between Mr. Jardin and Mr. Frost regarding operation of the company, Mr. Frost parted ways with XPrime and Mr. Jardin *after less than two weeks*. Mr. Jardin, XPrime and Mr. Frost settled all matters related to Mr. Frost's brief tenure at the company with a formal settlement agreement and mutual release executed in July of 2003. [Declaration of Seth M. Sproul, Exhibit 1 ("Settlement Agreement") (filed under seal).] The Settlement Agreement includes a comprehensive, mutual release pursuant to which Mr. Frost, XPrime, and "XPrime Affiliates" (defined to specifically include "Cary Jardin" individually) expressly surrendered "all claims related in any way to the transactions or occurrences" connected to Mr. Frost's involvement with XPrime. [Settlement Agreement ¶ 2.1 (filed under seal).] Mr. Jardin founded XPrime and was an officer, director and a principal stockholder at the time of the Settlement Agreement. [Complaint ¶ 9 (referring to "Jardin's company XPrime").] Mr. Jardin signed the Settlement Agreement on behalf of XPrime and was a direct beneficiary of the mutual release and other provisions contained therein. [Settlement Agreement.] Complying with his obligations under the Settlement Agreement, Mr. Frost returned the materials previously provided to him by XPrime and thereafter had no further dealings with XPrime or Mr. Jardin. Mr. Jardin did not have any involvement with DATAllegro.

As the face of the patent-in-suit shows, XPrime did not file the '874 patent at issue in this lawsuit until March 23, 2004, long after Mr. Frost separated from XPrime and the parties had entered into the Settlement Agreement.[2] [Complaint, Exhibit 1.] The '874 patent ultimately issued on February 13, 2007. [*Id*.] At some point, XPrime went defunct, but not before XPrime allegedly assigned the patent in-suit to Mr. Jardin. [Complaint ¶ 8.]

In July 2008, it was publicly announced that Microsoft would acquire DATAllegro. Shortly thereafter, at a crucial point in the closing of the sale, Mr. Jardin's lawyers appeared at DATAllegro's headquarters and threatened to bring a lawsuit against Mr. Frost and DATAllegro. They implied that Mr. Jardin would consider dropping the matter in exchange for a large payment,

---

[2] On January 16, 2003, Mr. Jardin filed two patent applications allegedly related in part to the '874 patent (the '504 application and the '811 application), but Mr. Jardin abandoned those patent applications after the Patent Office determined that they were fatally deficient.

but refused to provide any details regarding the threatened lawsuit. DATAllegro and Mr. Frost rejected Mr. Jardin's demand and shortly thereafter Mr. Jardin filed this lawsuit in which he alleges, among other things, facts and claims related to the transactions and occurrences between Mr. Frost and XPrime in 2003.

Mr. Jardin alleges that Mr. Frost was the CEO of XPrime in 2003 [Complaint at ¶ 9], that Mr. Frost had access to "confidential information and documents from Jardin and other XPrime employees" [*id.* at ¶ 10], that Mr. Frost attempted to convert Mr. Jardin's inventions by filing his own patents [*id.* at ¶ 11], and that once at DATAllegro, Mr. Frost used and incorporated Mr. Jardin's intellectual property into DATAllegro's products [*id.* at ¶ 12]. The Complaint, however, makes no connection between whatever Mr. Frost is alleged to have had access to in 2003 (which is not identified) and the patent-in-suit, which was not filed until 2004, long after Mr. Frost separated from XPrime.

On their face, Mr. Jardin's claims of infringement and particularly his willful infringement allegations against Mr. Frost are firmly based on the facts and circumstances surrounding Mr. Frost's brief relationship with XPrime in early 2003, more than five years before this suit was filed. Paragraph 18 alleges that Mr. Frost (and DATAllegro) had access to and copied Mr. Jardin's technology. Paragraph 19 alleges again that Mr. Frost had access to Mr. Jardin's confidential information during his employment, and paragraph 20 alleges that Mr. Frost used this information in products sold by his new company, DATAllegro. Paragraph 21 explicitly alleges that Mr. Frost's (and DATAllegro's) infringement is willful because of his "intentional copying" of Mr. Jardin's confidential information, even though in 2003 the parties resolved any differences they had by entering into the Settlement Agreement, and, moreover, the patent-in-suit was not filed until almost one year after Mr. Frost separated from XPrime.

### IV. PARAGRAPHS 9-12 AND 18-20 SHOULD BE STRICKEN FROM THE COMPLAINT BECAUSE THE SETTLEMENT AGREEMENT BETWEEN MR. FROST AND XPRIME PRECLUDES ACCUSATIONS AND CLAIMS AGAINST MR. FROST

Rule 12(f) allows for the removal of irrelevant and scandalous material.[3] "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Proc. 12(f); *Wailua Associates v. Aetna Cas. and Sur. Co.*, 183 F.R.D. 550, 553 (D.Haw. 1998). "The rationale behind granting motions to strike is to 'avoid ... prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegation any unnecessary notoriety.'" *Wailua Associates*, 183 F.R.D. at 553 (*citing 5A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1382, at 715 (2d ed.1990)*).

In 2003, Messrs. Frost and Jardin[4] settled and resolved all issues that relate in any way to Mr. Frost's relationship with XPrime. [*See* Settlement Agreement (Exh. 1) § 2.1.] The mutual release in the Settlement Agreement was broad, and was intended to be the final word on all issues related, directly or indirectly, in any way to the facts and circumstances surrounding Mr. Frost's very brief involvement with XPrime. [Settlement Agreement (Exh. 1) § 2.1; *see also* ¶ 2.2 and ¶ 3.]

Contravening the plain language of the release, paragraphs 9-12 and 18-20 of Mr. Jardin's Complaint allege facts that relate directly to Mr. Frost's relationship with XPrime. In light of the Settlement Agreement and the release therein, these allegations have been previously dealt with and resolved by the parties, and should be stricken pursuant to Rule 12(f). Furthermore, because these allegations are precluded by the Settlement Agreement from being offered into evidence, they are "impertinent" under Rule 12(f). *See Wailua Assoc.*, 183 F.R.D. at 554 ("An allegation is

---

[3] The Court converted the parties Rule 12(f) request to one for summary judgment. *See Farm Credit Bank of Spokane v. Parsons,* 758 F. Supp. 1368, 1371, 1372 n.4 (D. Mont. 1990) (treating a motion to strike as a motion for summary judgment under Fed. R. Civ. P. 56(c) where the moving party submitted numerous documents in support of the motion).

[4] Mr. Jardin is bound by the settlement agreement because he is named explicitly in the mutual release. [Settlement Agreement (Exh. 1) § 2.1.] Mr. Jardin also signed the agreement on behalf of XPrime, he was the founder of XPrime, and he was an officer, director, and a principal shareholder at the time of the Settlement Agreement [*Id.* at 6.], and, moreover, derives his rights to the patent from XPrime and could have obtained no more rights than XPrime had. *TM Patents, L.P. v. Int'l Bus. Machs. Corp.*, F.Supp. 2d 349, 365 (S.D.N.Y. 2000) ("[A]n assignee [cannot obtain] any better title than the assignor had.").

1  "impertinent" when it is irrelevant and could not be put into evidence between the parties.")

2  Finally, these paragraphs should be stricken because they exist only to add scandalous and

3  baseless accusations to disparage Mr. Frost, which is also precluded by the Settlement Agreement.

4  [*See* Settlement Agreement (Exh. 1) ¶ 4.]

5  **V.     THE CLAIMS AGAINST MR. FROST SHOULD BE DISMISSED**

6        All of the claims asserted against Mr. Frost as an individual should be dismissed under

7  Rule 12(b)(6) and Rule 56 because the claims are barred under the Settlement Agreement.[5]

8        A settlement agreement will bar claims that have already been resolved.  *See Petro-*

9  *Ventures, Inc. v. Takessian*, 967 F.2d 1337, 1342-43 (9th Cir. 1992) (affirming dismissal of claims

10 by district court in Southern District of California, holding that a settlement agreement that

11 unambiguously conveyed intent of parties to release all known and unknown claims and signed in

12 commercial context barred all subsequent claims arising out of the transaction); *Skrbina v.*

13 *Fleming Cos.*, 45 Cal. App. 4th 1353, 1366 (1996) ("[i]n general, a written release extinguishes

14 any obligation covered by the release's terms, provided it has not been obtained by fraud,

15 deception, misrepresentation, duress, or undue influence."); *see also Bardin v. Lockheed*

16 *Aeronautical Systems Co.*, 70 Cal. App. 4th 494, 732 (1999).  Courts view settlement agreements

17 as final dispositions, and as in collateral estoppel, will not adjudicate issues that have already been

18 resolved.  *See Petro-Ventures,* 967 F.2d at 1343.  Judicial efficiency and fairness dictate that the

19 final resolution of settlement agreements be enforced.

20       Mr. Jardin's claims against Mr. Frost should be dismissed because they arise directly from

21 the same set of facts and circumstances that were the subject of the mutual release in the

22 Settlement Agreement.  Mr. Jardin has thus not pled a sufficient factual basis upon which to make

23 a non-released claim against Mr. Frost personally for alleged patent infringement.

24

---

25 [5] A motion to dismiss may be treated as a motion for summary judgment "when matters outside
   the pleadings are presented to and not excluded by the Court." *Eckwortzel v. Crossman*, 561 F.
26 Supp. 2d 1144, 1149, n. 3 (D. Idaho 2008) ("[d]efendants' motions present factual material in
   support of their requests for dismissal, and are therefore properly brought as motions for summary
27 judgment"); *see also Kee v. Mersch*, No. 06-17369, 2008 WL 4682631 (9th Cir. Oct. 23, 2008)
   ("[i]f matters outside the pleadings are considered, a motion to dismiss under Rule 12(b)(6) is
28 treated as one for summary judgment under Rule 56").

The Settlement Agreement bars Mr. Jardin expressly and emphatically releases and discharges Mr. Frost from all claims related in any way to the transactions or occurrences between them, and moreover bars claims even though the patent-in-suit had not yet been filed at the time of the execution of the agreement.  The Ninth Circuit in *Petro-Ventures* explained that, "where the parties have negotiated at arms length and the intent of the settlement agreement is clearly to release all claims, ***known or unknown***, it would be detrimental to allow a party to assert claims that should have been covered by the agreement."  967 F.2d at 1339 (emphasis added).  Moreover, the Settlement Agreement goes on to expressly authorize Mr. Frost to freely to use information which is generally known in the trade or industry and his own skill and knowledge, know-how and experience to whatever extent and in whichever way he wishes in the future.  [Settlement Agreement § 5.1.]

**VI.    MR. JARDIN'S CLAIM AGAINST MR. FROST AND DATALLEGRO FOR WILLFUL INFRINGEMENT SHOULD BE DISMISSED**

Additionally, Mr. Jardin's Count II against Mr. Frost and DATAllegro for willful infringement should be dismissed under Rule 12(b)(6) and Rule 56 because it fails to allege any facts necessary for a count of willful infringement, particularly given that the factual allegations relating to Mr. Frost's 2003 dealings with XPrime are barred by the Settlement Agreement.

The Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955 (2007), requires Mr. Jardin to allege sufficient facts "to raise a right to relief above the speculative level." *Id.* at 1965.  Mr. Jardin cannot rely on "a formulaic recitation of the elements of a cause of action," but instead must plead facts sufficient to "raise a reasonable expectation that discovery will reveal evidence" supporting the claim.  *Id.*

Mr. Jardin's burden to plead willfulness-related facts is described in the Federal Circuit's *en banc* decision in *In re Seagate*, in which it established a heightened standard for proving willfulness.  *In re Seagate*, 497 F.3d 1360 (Fed. Cir. 2007).  In *Seagate*, the court abolished the old "affirmative duty of due care" previously imposed on those with mere notice of a patent.  *Id.* at 1371.  Consequently, no longer can a patentee rely on mere notice of a patent to allege willful infringement and shift the focus to the accused infringer's conduct.  Instead, a finding of

willfulness "requires at least a showing of objective recklessness," which means that "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id.* Moreover, once this objective standard is satisfied, "the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Id.*

Taking the pleading requirements of *Bell Atlantic* together with the substantive requirement of *Seagate*, Mr. Jardin's complaint fails to state a claim for willfulness, particularly given that the allegations regarding copying in 2003 should be stricken and dismissed under Rule 12(b)(6). Apart from his allegation that Defendants had notice of the '874 Patent, Mr. Jardin bases his willfulness infringement claim entirely on allegations relating to Mr. Frost's alleged copying of Mr. Jardin's inventions in 2003, even though the patent-in-suit was not filed until 2004. [Complaint ¶¶ 18-21.] These copying allegations are based upon Mr. Frost's alleged employment at XPrime in 2003, and thus are properly stricken as discussed above. Without the copying allegation, Mr. Jardin does not – and cannot – make a sufficient willful allegation because merely alleging notice alone is no longer sufficient. *See Seagate*, 497 F.3d at 1371.

## VII. CONCLUSION

For the reasons stated above, Defendants respectfully requests that the Court: (1) strike paragraphs 9-12 and 18-20 of Mr. Jardin's First Amended Verified Complaint pursuant to Rule 12(f) and Rule 56; (2) grant summary judgment that all claims against Mr. Frost are barred by the Settlement Agreement; and (3) enter summary judgment in favor of Mr. Frost and DATAllegro with respect to Mr. Jardin's Count II for willful infringement.

Dated: November 24, 2008                    FISH & RICHARDSON P.C.

                                            By:   *s/ Seth M. Sproul*
                                                  Seth M. Sproul (SBN 217711)
                                                  E-mail: sproul@fr.com
                                            Attorneys for Defendants
                                            DATALLEGRO, INC. AND STUART FROST

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on November 24, 2008 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civ LR 5.4(d). Any other counsel of record will be served by U.S. mail.

_____
JoAnne M. Owens

10882717.doc