# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARY A. JARDIN,<br><br>    Plaintiff,<br>vs.<br><br>DATALLEGRO, INC. and STUART O. FROST,<br><br>    Defendants. | CASE NO. 08cv1462 - IEG - RBB<br><br>ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

Defendants move for partial summary judgment under Fed. R. Civ. P. 56 and ask the Court (1) strike portions of Plaintiff's First Amended Complaint; (2) dismiss all counts against Defendant Frost individually; and (3) dismiss the willful infringement claim against both Defendants. After re-briefing, oral argument, and supplemental briefing, the Court DENIES Defendants' motion.

## BACKGROUND

On February 13, 2007, the U.S. Patent and Trademark Office ("PTO") issued U.S. Patent No. 7,177,874 (the '874 Patent), entitled "System and Method for Generating and Processing results Data in a Distributed System." Plaintiff is the sole inventor and owner of the '874 Patent, acquiring all rights by virtue of assignment from his now-defunct company XPrime.

In 2003, Plaintiff's company, XPrime, employed Defendant Frost as the Chief Executive Officer for a brief period. At that time, Plaintiff alleges he had invented and filed a patent application for the technology described in the '874 Patent in the area of distributed database architecture. Plaintiff alleges, as Chief Executive Officer, Frost had access to confidential information and

documents from Plaintiff and other XPrime employees.

In 2003, XPrime terminated Defendant Frost. Following the termination, Defendant Frost, XPrime, and Plaintiff entered into a "Confidential Settlement Agreement and Mutual Release of All Claims and Mutual Release of Contractual Rights and Obligations" (Agreement). The Agreement included a mutual release of claims with the following language:

> Frost . . . and XPrime for itself . . . or affiliated entities of XPrime, past and present, including ... Cary Jardin . . . unconditionally, irrevocably and absolutely release . . . all claims related in any way to the transactions or occurrences between them to date, to the fullest extent permitted by law, including, but not limited to, Frost's relationship with XPrime . . . [and] all other losses, liabilities, claims, charges, demands and causes of action, known or unknown, suspected or unsuspected, arising directly or indirectly out of or in any way connected with Frost's relationship with XPrime. This release is intended to have the broadest possible application . . ..

(Settlement Agreement, ¶ 2.1, Doc. No. 26, under seal.) Frost and Plaintiff signed this release on July 30, 2003.

Shortly after leaving XPrime, Frost formed a new company Datallegro, Inc. At Datallegro, Frost allegedly copied, used, and incorporated Plaintiff's intellectual property into Datallegro products. This infringing use allegedly continues until this day.

Plaintiff alleges Defendants have committed patent infringement and willful infringement of the patent. Plaintiff bases his patent infringement claim upon Datallegro's and Frost's past, current, and future infringement of the '874 Patent. Plaintiff bases his willful infringement claim upon allegations Frost copied intellectual property during his employment at XPrime and then used this intellectual property when he moved to Datallegro.

On August 12, 2008, Plaintiff filed a complaint with a jury demand. On September 22, 2008, Defendants filed a motion to strike portions of Plaintiff's First Amended Complaint and to Dismiss Certain Counts. (Doc. No. 23.) Defendants attached a Settlement Agreement which purportedly barred claims. On November 4, 2008, the Court converted the motion into a motion for summary judgment and ordered rebriefing. (Doc. No. 33.) Defendants filed their new motion, Plaintiff opposed, and Defendants filed a reply. (Doc. No. 34, 35, 36.) On December 22, 2008, the Court heard oral argument and ordered letter briefing on an issue of state law.

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A dispute is "genuine" when "the evidence presented is such that a jury applying [the appropriate] evidentiary standard could reasonably find for either the plaintiff or the defendant." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. Once the movant meets the Rule 56 requirement, the burden shifts to the non-moving party, who "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. The non-moving party cannot merely rest on mere allegations or denials of his pleadings, but rather must designate specific facts showing there is a genuine issue for trial. Celotex, 477 U.S. at 325. "[F]ederal law always governs the validity of releases of federal causes of action." Petro-Ventures, Inc. v. Takessian, 967 F.2d 1337, 1340 (9th Cir. 1992) (citation omitted).

**DISCUSSION**

The basis of this motion for partial summary judgment is Defendants' argument the Agreement precludes reliance on any alleged pre-agreement misconduct to support Plaintiff's claims. Because this is the sole basis for the motion, the facts material to this motion are those facts surrounding Frost's employment with XPrime and the Agreement. There are no issues of material fact as to the validity of the Agreement because Plaintiff does not challenge the Agreement's execution, present extrinsic evidence of its meaning, and does not dispute the document's contents. Further, the parties do not dispute Mr. Jardin worked for XPrime and left that employment in 2003. Finally, the parties do not dispute the '874 patent was issued in 2007 to XPrime. A "settlement agreement is a contract, of course, and its interpretation is a matter of law." Mays v. United States Postal Service, 995 F.2d 1056, 1059 (Fed. Cir. 1993). The remaining issues involve disputes over the proper interpretation of the Agreement, which are questions of law.

**A.   Agreement Applies to Plaintiff**

Plaintiff argues he was not party to the Agreement, therefore, not bound by its express terms.

Defendants argue Plaintiff is bound as either a successor-in-interest or as an explicitly named party in the Agreement. Plaintiff is named as a releasing party in paragraph 2.1 of the Agreement.

In general, a purchaser takes a patent subject to encumbering restrictions. T.M. Patents, L.P. v. I.B.M., 121 F. Supp. 2d 349, 356 (S.D.N.Y. 2000) ("[A]n assignee [cannot obtain] any title better than the assignor had."). Plaintiff admits he is the successor-in-interest to X-Prime's patent. (Compl. (FAC ¶ 8.) At the time of issuance, the patent was subject to any settlement agreements into which XPrime had entered. Therefore, the patent was subject to the Agreement at the time of issuance. Because Plaintiff could not obtain title better than XPrime's title, Plaintiff took the patent subject to the Agreement.

**B.     Motion to Strike**

This issue is whether the Agreement prohibits Plaintiff from making background factual allegations related to Defendant Frost's employment. Because there are no disputed material facts as to the Agreement, the parties address whether the Court must strike the paragraphs as a matter of law. The disputed paragraphs, Paragraphs 9-12 of the First Amended Complaint, contain the following background, factual allegations:

> 9. Defendant Frost was employed at Jardin's company XPrime as the Chief Executive Officer for a brief period of time in 2003. At this time, Jardin had invented and filed a patent application for the novel technology described in the '874 Patent in the area of distributed database architecture.
>
> 10. As the Chief Executive Officer, defendant Frost had access to confidential information and documents from Jardin and other XPrime employees.
>
> 11. Shortly after leaving XPrime, defendant Frost attempted to convert Jardin's inventions to his own by filing with the USPTO patent applications in the distributed database architecture field, the same subject matter as Jardin's intellectual property.
>
> 12. At Datallegro, defendant Frost used and incorporated Jardin's intellectual property into Datallegro's products. These actions were taken to benefit both defendant Frost and his newly formed company, defendant Datallegro. Defendants' unauthorized use of Jardin's intellectual property continues to this day.

Paragraphs 18-20 contain allegations pertaining to Plaintiff's willful infringement claim:

> 18. As set forth herein, Defendants had access to and copied Jardin's inventions as disclosed in the '874 Patent, without authorization.

> 19. Defendant Frost, while employed as the Chief Executive Officer of XPrime, had direct access to plaintiff's intellectual property.
>
> 20. Defendant Frost, after leaving the employment of XPrime, used and incorporated plaintiff's intellectual property in products

i.  Parties' Arguments

Defendants ask the Court to strike paragraphs 9-12 and 18-20 of Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(f). These paragraphs allege facts that occurred during Defendant Frost's employment with XPrime. Defendants offer three reasons to strike the paragraphs: (1) the Settlement agreement forecloses these allegations; (2) the allegations are impertinent because proof of the allegations would be inadmissible into evidence; and (3) the allegations are scandalous because they exist only to add scandalous and baseless accusations. Specifically, Defendants argue the parties agreed to surrender "all claims related in any way to the transactions or occurrence between them to date, to the fullest extent permitted by law." (Agreement ¶2.1.) Additionally, Defendants argue, in one sentence, the disputed paragraphs violate the non-disparagement clause, which is contained in paragraph 4 of the Agreement and quoted below.

Plaintiff argues the Court should not strike the disputed paragraphs for three reasons. First, the plain language of the Settlement Agreement precludes only claims arising before the parties signed the agreement in 2003; therefore, it is inapplicable to this case because the claim arose when the patent was issued on February 13, 2007. Second, the disputed paragraphs are factual allegations, not claims subject to strike. Third, the paragraphs are not subject to strike under the Settlement Agreement's non-disparagement clause because the allegations are not scandalous and baseless accusations, but instead provable allegations.

ii.  Analysis

Rule 12(f) permits the court to strike any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are a drastic remedy and generally disfavored. 5C Wright & A. Miller, Federal Practice and Procedure §1380 (3d ed. 2004).

A matter is impertinent if the statements do not pertain, and are not necessary, to the issues in question. Fantasy, Inc.v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993) rev'd on other grounds 510

U.S. 517 (1994). The settlement agreement releases "all claims" related to Frost's employment with XPrime, but makes no mention of background factual allegations. The disputed paragraphs contain background facts which occurred pre-settlement, but may be relevant to matters such as intent and lack of mistake. Furthermore, facts need not be admissible to be alleged. C.f. Stiefel v. Bechtel Corp. 2008 WL 2025105 (S.D. Cal. May 7, 2008) (refusing to strike background allegations which would be otherwise time-barred). Therefore, the Court declines to strike the disputed paragraphs as impertinent.

"Scandalous" matters "casts a cruelly derogatory light on a party or other person." In re 2TheMart.com, Inc. Sec. Litig., 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000); see, e.g. Jacobsen-Wayne v. Calvin C.M. Kam, M.D., Inc., 198 F.3d 254 (9th Cir. 1999) (striking the words "date rape" and "rape" from a reply brief in a case arising from a medical examination); Alvarado-Morales v. Digital Equip. Corp., 843 F.2d 613 (1st Cir. 1988) (striking the terms "concentration camp," "brainwashing," and "torture" in a tort case in the employment context). Given this precedent, the allegations are not scandalous because the complaint uses non-inflammatory language to set forth relevant facts.

Further, the non-disparagement clause does not bar these allegations. In the Agreement, paragraph 4, the parties agree "each will not make any voluntary statements . . . that defame, disparage or in any way criticize the reputation, business practices, or conduct of Frost, XPrime or XPrime Affiliates." (Agreement, ¶ 4.) This argument is barred by the litigation privilege, which is intended to ensure free access to the courts. See Whitty v. First Nationwide Mortg. Corp., 2007 WL 628033 at *9 (S.D. Cal. February 26, 2007) ("Whether the litigation privilege applies to an action for breach of contract turns on whether its application furthers the policies underlying the privilege.").

Therefore, the Court DENIES Defendants' motion to strike.

**C.    Motion to Dismiss all Claims against Defendant Frost**

Because there is no dispute of material facts as to the Agreement, the parties dispute whether all claims against Defendant Frost should be dismissed as a matter of law. The primary issue concerns the scope of the Agreement. In paragraph 2.1, the Agreement provides a general release:

> [The parties] unconditionally, irrevocably, and absolutely release and discharge each other from all claims related in any way to the transactions or occurrences between them to date, to the fullest extent permitted by law, including, but not limited to, Frost's relationship with XPrime . . . [and] all other losses, liabilities, claims, charges, demands and causes of action, known or unknown, suspected or unsuspected, arising directly or indirectly out of or in any way connected with Frost's relationship with

1  XPrime . . .. This release is intended to have the broadest possible application . . ..
2 (Settlement Agreement, ¶2.1.)

i. Parties' Arguments

Defendants argue the Agreement bars any claims based upon Defendant Frost's alleged pre-settlement wrongful conduct. According to Defendants, the release resolved all issues that relate in any way to Frost's employment with XPrime. Defendants rely on the plain language of the release, noting it releases all claims "known and unknown" "related in any way" to the "transactions and occurrences between Mr. Frost and XPrime." Further, Defendants cite two cases in which courts found a release barred future claims: Petro-Ventures v. Takessian, 967 F.2d 1337 (9th Cir. 1992) and Skrbina v. Fleming Cos., 45 Cal. App. 4th 1353 (1996). Defendants argue the patent infringement claim and the willful infringement claims cannot survive without relying on pre-settlement wrongdoing; therefore, they should be dismissed as a matter of law. Additionally, Defendants argue the Agreement allows Frost "to freely use information which is generally known in the trade or industry and his own skill or knowledge." (Agreement, ¶5.1.)

Plaintiff argues the release only applies to claims which arose pre-settlement; therefore, it does not bar the patent claim which arose in 2007. Plaintiff relies on the plain language of the agreement, which he contends releases all "claims" that have arisen "to date." Plaintiff then argues Petro-Ventures is limited to the securities context and the language in the Skrbina release is distinguishable.

ii. Analysis

Federal courts interpret settlement agreements according to the principals of contract law. Northwest Acceptance Corp. v. Lynnwood Equip., Inc., 841 F.2d 918, 920 (9th Cir. 1998). Although "federal law always governs the validity of releases of federal causes of action." Petro-Ventures, 967 F.2d at 1340, the Court may employ general tenants of contract law. "Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself." County of Santa Clara v. Astra USA, Inc., 540 F.3d 1094, 1100 (9th Cir. 2008). "The plain language of the contract should be considered first." Id. A contract "is only ambiguous if reasonable people could find its terms susceptible to more than one interpretation." Id. Courts view settlement agreements as final dispositions and will not adjudicate issues that have

1  already been resolved.  Petro-Ventures, 967 F.2d at 1343.

2  In essence, Defendants advocate reading the disputed Agreement provision as an exculpatory
3  clause releasing liability for claims based upon both pre-settlement and future misconduct.  This is not
4  a reasonable interpretation given the plain language of the provision and the context of the transaction.
5  First, the language of the contract does not explicitly release liability for future misconduct.  As a
6  general rule, contractual limitations on liability for future conduct must be clearly set forth.  17A Am.
7  Jur. 2d Contracts § 282.  Here, the language releases claims "known or unknown" "related in any
8  way" to the "transactions and occurrences between Mr. Frost and XPrime to date."  Exculpatory
9  language is not clearly set forth.  It is more probable the parties intended the language to release
10 claims which are based solely on pre-settlement conduct.  Second, it would make little sense for the
11 parties to include an exculpatory clause in this factual situation.  Generally, exculpatory clauses arise
12 at the beginning of a business relationship, not at the end of the relationship.  See, e.g., Starrag v.
13 Maersk, Inc., 486 F.3d 607 (9th Cir. 2007) (involving an exculpatory provision in initial contract to
14 ship goods); Royal Ins. Co. of America v. Southwest Marine, 194 F.3d 1009 (9th cir. 1999) (analyzing
15 exculpatory provision in initial contract to rent space in boat yard).  Logically, the parties would have
16 no reason to  indemnify themselves from liability for future acts if they planned to have no future
17 relationship.  Third, no reasonable businessman would enter a release that would be tantamount to a
18 license to commit patent infringement.  Weighing these factors, the Court finds the parties did not
19 intend this clause to exculpate the parties from liability for future misconduct.

20 Further, even if the parties intended the clause to exculpate liability for future misconduct, the
21 clause could not cover the alleged conduct as a matter of public policy.  An attempted exemption from
22 liability for a future intentional tort or crime is generally held void.  Restatement (Second) of
23 Contracts § 195(1).  Here, Plaintiff alleges Defendants engaged in patent infringement and willful
24 infringement, actions which require affirmative, intentional acts.  The contract could not exempt
25 Defendants from liability for their future intentional acts.

26 Neither Petro-Ventures or Skribina compels a different result.  In both of those cases, the court
27 dealt with claims that arose only from conduct that occurred prior to the release.  In Petro-Ventures,
28 the court determined the release waived securities claims based on conduct that had been completed

1  at the time of the release, but were unknown to the plaintiff. Similarly, in Skribina, the court found
2  releasing language precluded the plaintiff's suit for unlawful discrimination and wrongful discharge
3  based entirely on pre-settlement conduct. In contrast, the instant case alleges a claim based on
4  conduct which began before the settlement agreement, but has continued into the post-settlement
5  period.

6  As for Defendants' argument Frost is "free to use his skill or knowledge," this is a disputed
7  fact. The Court has no information as to the extent of Frost's skill or knowledge, the general
8  availability of information in the industry, or any indication this clause applies to the instant case.
9  Accordingly, the "skill or knowledge" clause is not dispositive at this stage in the proceedings.

10 **D.  Willful Infringement Claim Against All Defendants**

11 i.  Parties' Arguments

12  Defendants argue Plaintiff fails to allege facts necessary to support the willful infringement
13 claim, particularly if the disputed paragraphs are barred by the Settlement Agreement. Defendants
14 argue Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), requires Plaintiff allege sufficient facts
15 "to raise a right to relief above the speculative level." Defendants then argue In re Seagate, 497 F.3d
16 1360 (Fed. Cir. 2007) defines "willfulness" as "objective recklessness" in the context of willful
17 infringement litigation. Combining these two requirements, Defendants argue Plaintiff has not stated
18 a claim for willfulness unless Plaintiff relies on pre-agreement conduct.

19  Plaintiff argues Twombly and Seagate did not change the pleading requirements, therefore,
20 an allegation of willful infringement must only meet the requirements of Rule 8. F5 Networks, Inc.
21 v. A10 networks, Inc. No. C07-1927 RSL, 2008 U.S. Dist. LEXIS 31319 at *2-*3 (W.D. Wa. Mar.
22 10, 2008). According to Plaintiff willfulness requires "a pleading equivalent to 'with a knowledge
23 of the patent and of his infringement.'" F5 Networks, Inc., 2008 U.S. Dist. LEXIS 31319 at *3.
24 Plaintiff argues he satisfied this standard by alleging "defendants has [sic] actual or constructive
25 knowledge of the '874 Patent, yet continue to infringe this patent to this very day." (First Amen.
26 Compl. ¶ 21.) Combined with the rest of the complaint, Plaintiff asks the Court to deny the motion.

27 ii.  Analysis

28  The complaint sufficiently alleges willful infringement and issues of material fact prevent

1 summary judgement. Recently, the Northern District of California found Seagate only addressed what
2 is necessary to prove a claim of willfulness, not whether a plaintiff has sufficiently alleged willful
3 infringement as a pleading matter. Rambus, Inc. v. Nvidia Corp., 2008 WL 4911165 at *2 (N.D. Cal.
4 Nov. 13, 2008). Accordingly, Plaintiff need only provide "a pleading equivalent to 'with a knowledge
5 of the patent and of his infringement.'" Sentry Prot. Prods. Inc. v. Eagle Mfg. Co., 400 F.3d 910, 918
6 (Fed. Cir. 2005) (quoting Dunlap v. Schofield, 152 U.S. 244, 248 (1894)).

Here, Plaintiff alleges "Defendants has [sic] actual or constructive knowledge of the '874 Patent, yet continue to infringe this patent to this very day." (Compl ¶ 21). This allegation sufficiently alleges Defendants had knowledge of the patent and of their infringement.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motion for partial summary judgment.

**IT IS SO ORDERED**.

DATED: January 18, 2009

_____
IRMA E. GONZALEZ, Chief Judge
United States District Court