# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARY A. JARDIN,<br><br>                    Plaintiff,<br>vs.<br><br>DATALLEGRO, INC. and STUART FROST,<br><br>                    Defendants. | CASE NO. 08-CV-1462-IEG (WVG)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**<br><br>[Doc. No. 138] |

Defendants Stuart Frost and Datallegro, Inc. bring this motion for summary judgment of non-infringement of a patent owned by Plaintiff Cary Jardin. A hearing in this case was held on March 14, 2011. After reviewing the briefs and related materials submitted by the parties, the Court **GRANTS** Defendants' motion.

## BACKGROUND

Plaintiff Cary Jardin filed this action against Defendants Stuart Frost and Datallegro for infringement of U.S. Patent Number 7,177,874 (the "'874 Patent"). Plaintiff is an inventor and entrepreneur in the database architecture field. Defendant Stuart Frost was previously the CEO of XPrime, Inc., a company Plaintiff founded. After Defendant Stuart Frost was terminated as CEO, he founded Defendant Datallegro, Inc., which created a distributed database product allegedly derived from technology disclosed in the '874 patent.

The technology of the '874 Patent relates to the field of distributed database systems. Businesses rely on such systems for storage and retrieval of large amounts of information. Generally, distributed database systems are designed to divide searches into a series of smaller tasks that can be distributed among the various computers on a network. Because no individual computer processes the entire job by itself, this configuration increases efficiency. The '874 patent describes methods of distributing data and processing over a plurality of nodes in order to reduce the time to process search results as compared to previously-known systems. In particular, the invention relates to systems and methods for increasing the performance of computer systems by distributing the data processing load among multiple processors in a clustered environment.

Defendants' technology includes two pieces of software: a back-end database provided by Ingres Corporation ("Ingres") and a proprietary query optimization engine provided by DATAllegro. The proprietary query engine runs on a computer called a "control node." The Ingres database runs on a series of computers called "compute nodes." The DATAllegro technology cannot do anything alone; it must be integrated with a customer's data and data definition, and it needs commands from a user to determine which processes to perform and how to perform them in light of the user's data definition.

Plaintiff asserts that DATAllegro version 2.X and 3.X products infringe the '874 patent. When Plaintiff's '874 patent issued on February 13, 2007, the current build of the accused technology was version 2.1.1. Subsequent versions were made, with the last being made just before Microsoft acquired DATAllegro.[1] All subsequent versions operate similarly to version 2.1.1.

At issue in this motion is whether the DATAllegro system infringes independent Claims 1 and 15 of the '874 patent. Specifically, Defendants contend Plaintiff has not provided evidence of an infringing "query command" as recited by Claims 1 and 15. Additionally, Defendants contend that the DATAllegro system does not perform the "comparing" or "intermediate results files"

---

[1] DATAllegro is now a wholly-owned subsidiary of Microsoft.

limitations of Claim 1.  Defendants also contend that the DATAllegro system does not perform the "comparing," "intermediate results files," or "join table definitions" limitations of Claim 15.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  Miller v. Glenn Miller Prod., Inc., 454 F.3d 975, 987 (9th Cir. 2006).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial.  Nissan Fire & Marine Ins. Co. v. Fritz Cos. Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).  When the non-moving party would bear the burden of proof at trial, the moving party may satisfy its burden on summary judgment by simply pointing out an absence of evidence from the non-moving party.  Miller, 454 F.3d at 987.  "The moving party need not disprove the other party's case."  Id.

Once the movant has made that showing, the burden shifts to the opposing party to produce "evidence that is significantly probative or more than 'merely colorable' that a genuine issue of material fact exists for trial."  LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1137 (9th Cir. 2009) (citing FTC v. Gill, 265 F.3d 944, 954 (9th Cir. 2001)); see also Miller, 454 F.3d at 988 ("[T]he non-moving party must come forward with more than 'the mere existence of a scintilla of evidence.'") (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The nonmoving party cannot merely rest on mere allegations or denials of his pleadings, but rather must designate specific facts showing there is a genuine issue for trial.  Celotex, 477 U.S. at 325.

"To infringe a method claim, a person must have practiced all steps of the claimed method.  Lucent Techs. Inc. v. Gateway, Inc., 580 F.3d 1301, 1317 (Fed. Cir. 2009), *cert. denied* Microsoft Corp. v. Lucent Techs. Inc., ---U.S.---, 130 S. Ct. 3324 (2010).  "[A] finding of infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period."  Id.  To prove an instance of infringement, "a patentee must either point to specific

instances of direct infringement or show that the accused device necessarily infringes the patent in suit." ACCO Brands, Inc. v. ABA Locks Mfr. Co., 501 F.3d 1307, 1313 (Fed. Cir. 2007). A patentee may show infringement with direct or circumstantial evidence. Lucent, 580 F.3d at 1318.

Infringement may be literal or established under the doctrine of equivalents. In either case, an infringement analysis is a two-step inquiry: the court must first construe the claims, and, second, the court must apply the construed claims to the accused device. See, e.g., Acumed LLC v. Stryker Corp., 483 F.3d 800, 804 (Fed. Cir. 2007).

To establish literal infringement of a method claim, each and every step or limitation must be performed exactly as claimed. BMC Res., Inc. v. Paymentech, L.P., 498 F.3d 1373, 1379 (Fed. Cir. 2007). "[A]ny deviation from the claim precludes a finding of literal infringement." Litton Sys. Inc. v. Honeywell, Inc., 140 F.3d 1449, 1454 (Fed. Cir. 1998).

To establish infringement under the doctrine of equivalents, the patentee must show that the accused device, which literally lacks one or more elements, contains an "equivalent" to any missing element. See Zelinski v. Brunswick Corp., 185 F.3d 1311, 1316 (Fed. Cir. 1999); see also TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc., 529 F.3d 1364, 1377 (Fed. Cir. 2008) ("Infringement under the doctrine of equivalents may be found when the accused device contains an 'insubstantial' change from the claimed invention."). "Whether equivalency exists may be determined based on the 'insubstantial differences' test or based on the 'triple identity' test, namely, whether the element of the accused device 'performs substantially the same function in substantially the same way to obtain the same result.'" TIP Sys., 529 F.3d at 1377 (quoting Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 38-40 (1997)).

The doctrine of equivalents does not allow a court to ignore claim limitations, however. The "all elements" rule precludes the application of the doctrine of equivalents where it would entirely vitiate a claim limitation. See Warner-Jenkinson Co., 520 U.S. at 39 n.8; Tronzo v. Biomet, Inc., 156 F.3d 1154, 1160 (Fed. Cir. 1998). "Under the 'all elements' rule, 'the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole.'" E-Pass Techs., Inc. v. 3Com Corp., 473 F.3d 1213, 1221 (Fed. Cir. 2007) (quoting

Warner-Jenkinson, 520 U.S. at 29). The All Elements Rule is a legal issue ripe for adjudication on summary judgment. Warner- Jenkinson, 520 U.S. at 39 n.8.

## DISCUSSION

**A.     Plaintiff's Objection to Consideration of Defendants' Expert**

As an initial matter, Plaintiff objects to Defendants' proffered declarant, Mr. Brian Jew, as a witness. Defendants, however, offer Mr. Jew as a fact declarant who provided "an accurate *factual* description of how the accused instrumentality operates." [Defs.' Reply, at 1 (emphasis in original).]

Plaintiff relies on Invitrogen Corp. v. Clontech Labs. Inc., for the proposition that "[u]nsubstantiated attorney argument regarding the meaning of technical evidence is no substitute for competent, substantiated expert testimony." 429 F.3d 1052, 1068 (Fed. Cir. 2005). In Invitrogen, where the date on which an inventor conceived of an invention was at issue, the defendant's expert provided "no substantive factual guidance," only "wholly conclusory assertions on a legal issue." Id. The defendant attempted to compensate for the deficiencies in its expert's testimony with "extensive attorney argument regarding multiple notebook entries [made by the inventor]." Id.

In contrast, Mr. Jew's declaration makes no legal conclusions and does not directly address the patent at issue; Mr. Jew simply describes the accused technology and how it operates. [See generally Jew Decl.] Moreover, Mr. Jew's declaration states that he was employed by DATAllegro from 2005-2008 in various capacities as a software and database engineer, that he is currently employed by Microsoft as a "Senior Test Lead," and that he has personal knowledge of the matters described in his declaration. [See Jew Decl. ¶ 1.] Although Mr. Jew is not a designated expert in this case, his declaration lays the foundation for his knowledge of the accused technology based on his former employment with DATAllegro, and his testimony is relevant because it describes the accused technology and how it operates. Abraham v. Super Buy Tires, Inc., 2007 WL 1450311 (S.D. Cal. May 15, 2007).

Accordingly, the Court allows Mr. Jew's testimony for consideration on summary judgment.

### B. "Query Command" in Both Claims 1 and 15

At issue with this limitation is whether Plaintiff has alleged a query command that necessarily would result in infringement. Specifically, the parties disagree on whether there is any instance where a user request actually caused the accused system to perform all of the steps of either Claim 1 or Claim 15. According to the Court's claim construction order, the claims require a user-generated query command that results in the comparison of data stored on different nodes. As described by the parties, this is a complex, or "distribution incompatible," join. Therefore, to infringe Claim 1 or Claim 15, a user-generated query command must lead to a distribution incompatible join.

Plaintiff presented deposition evidence from employees of an entity that purchased DATAllegro products using the accused technology (the "Customer"). Employees of the Customer used query commands to prompt the DATAllegro system to perform distribution incompatible joins. Specifically, a 30(b)(6) witness testifying on behalf of the Customer confirmed that it ran queries on an accused DATAllegro appliance resulting in a distribution incompatible join. Plaintiff also presented testimony of a former DATAllegro employee and a second 30(b)(6) witness testifying on behalf of the Customer. Both deponents confirmed that DATAllegro taught customers how to distribute tables across nodes and how to perform complex joins. The former DATAllegro employee further confirmed that DATAllegro customers did perform complex joins.

The Court finds the witness testimony persuasive. The new testimony shows evidence that the DATAllegro system was used to conduct at least one distribution incompatible join of the type contemplated by Claims 1 and 15. That is sufficient to defeat summary judgment with respect to the query command limitation. Accordingly, the Court **DENIES** summary judgment with respect to the Query Command limitation in Claims 1 and 15.

### C. Claim 1

#### 1. "Comparing" Limitation

After the <u>Markman</u> hearing, the Court construed this term to mean that the join table and database table are located on different nodes at the time of comparison. During reexamination of

the '874 patent, the Examiner distinguished Claim 1 of Plaintiff's invention from prior art based on the location of the database tables when they are compared. Prior art transferred a table from one node to another, and the comparison occurred on one node. Claim 1 of the '874 patent describes technology that compares tables across nodes–a process Defendants dubbed "cross-nodal comparison" during the claim construction hearing. Relying on Claim 1's language and the Examiner's statements, the Court constructed the Claim 1's comparison limitation to include a locational requirement: the "comparison" recited in Claim 1 compares a join table and a database table that are *located on different nodes* at the time of comparison.

Defendants point to expert testimony stating that the accused system can only compare tables on the same local node. [See Jew Decl. at ¶ 11.] Plaintiff identifies statements by Defendants' expert: "we will move data to make [a comparison] occur" and "we are moving data to complete a join," [Defs.' MSJ at 9], and "a compute node in the DATAllegro technology can only compare data that is located at the control node." [Jew Decl. ¶ 11.] The parties therefore agree that the DATAllegro system compares data residing on the same local node at the time of comparison.

To infringe on the '874 patent, however, the comparison must satisfy Claim 1's locational requirement. That is, regardless of where the data is stored, the compared data tables must reside on different nodes at the time of comparison. But the accused technology can only perform comparisons where the data is located on one node at the time of comparison. [See id.] Thus, the accused technology does not perform the comparing step as recited in Claim 1.

Because the DATAllegro system does not perform the comparison limitation of Claim 1, summary judgment of non-infringement is appropriate with respect to this limitation. Because Claim 1 is a method claim, the failure to perform any one step is sufficient to establish non-infringement of the entire claim. Lucent, 580 F.3d at 1317. Therefore, the Court finds in favor of Defendants and **GRANTS** summary judgment of non-infringement on Claim 1.

    **2.**    **"First Intermediate Results File" and "Second Intermediate Results File"**

The dispute over this term derives from the "comparison" arguments above. There is no dispute that the comparison of database tables generates the intermediate results files. The parties

disagree on whether the comparison that leads to the results takes place on the same node or across different nodes; that is, they disagree on the location and nature of the data that populates the intermediate results files.

Because the accused technology does not satisfy Claim 1's locational requirement, it does not generate intermediate results files in the same manner as described in Claim 1. Accordingly, the Court **GRANTS** summary judgment of non-infringement with regard to this limitation.

### 3. Conclusion for Claim 1

The accused system does not perform the "comparison" and "intermediate results files" limitations of Claim 1. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment of non-infringement with regard to Claim 1.[2]

## D. Claim 15

### 1. "Comparing" Limitation

#### a. Construction of "Database Tables"

Central to the dispute over this limitation is a statement in the Court's claim construction order: "[U]nlike claim 1, [the nodes in Claim 15] store complete database tables, rather than portions of database tables." [Doc. No. 124, at 21.] The parties agree that the comparisons of Claim 15 take place when files are on the same local node. However, the parties disagree over what types of tables this step actually compares.

The construction of the term "database table" in Claim 15 is properly before the Court on summary judgment. See In re Ricoh Co. Ltd. Patent Litig., No. C 03-02289 JW, 2010 WL 3562557, at *2 (N.D. Cal. May 12, 2010) (finding that construction of a disputed term is a matter in dispute between the parties and properly before the Court on summary judgment). In accordance with its claim construction order, the Court finds Claim 15 relates to "complete"

---

[2] Because Defendants do not infringe Claim 1, it follows that Defendants also do not infringe Claims 2-14. Claims 2-7 are dependent upon Claim 1, and cannot be infringed without infringement of Claim 1. Claim 8 is an independent claim reciting a system that follows the method of Claim 1. A system cannot infringe Claim 8 without following, and infringing, the method of Claim 1. Finally, Claims 9-14 are dependent on Claim 8, and cannot be infringed without also infringing Claim 8. Thus, because Defendants' technology does not infringe Claim 1, it cannot infringe Claims 2 through 14.

database tables, and that "complete" tables differ from "portions" of tables described in Claim 1. Of particular significance, the patent uses different language in Claims 1 and 15–Claim 1 discusses *portions of database tables* while Claim 15 discusses *database tables*. Taken in context, then, the language of Claim 15 requires comparison of something other than *portions* of a database table–i.e., *complete* database tables. The Court also finds persuasive the Examiner's statements during reexamination. Specifically, the Examiner cited a prior patent, the *Baru* reference, as dealing with portions of database tables spread across multiple nodes. This suggests that the Examiner understood Claim 15 as referring to complete database tables, and only allowed Claim 15 on that basis.

### b. Comparison of Complete Tables

Having resolved the definition of "database tables," the Court next turns to the actual comparison of complete database tables. As set forth in Claim 15, the claimed invention recites two nodes, each storing two complete database tables. Two comparisons then take place, one on each node, comparing a join table with the two complete database tables that reside on the node. Thus, Claim 15 describes local comparisons involving complete database tables, taking place on each of two separate nodes.

In contrast, when the DATAllegro system compares complete tables, all complete tables are stored on each node. [See Jew Decl. at ¶¶ 12, 15.] As a result, the DATAllegro system only makes one comparison–a local comparison on one node, comparing all complete database tables. In other words, while the DATAllegro system performs only one comparison on one node, Claim 15 requires two comparisons–one comparison on each of two separate nodes. Therefore, the DATAllegro system does not perform the "comparison" of complete database tables step in the manner Claim 15 describes.

Accordingly, the Court **GRANTS** summary judgment of non-infringement in favor of Defendants with respect to this limitation of Claim 15.

### 2. "First Intermediate Results File" and "Second Intermediate Results File"

As with Claim 1, the dispute over Claim 15's First and Second Intermediate Results Files limitation derives from the dispute over Claim 15's "comparison" arguments because compared

data populates the intermediate results files. With regard to Claim 15, however, the parties disagree over the types of tables that are compared. According to the Court's claim construction, Claim 15 contemplates a comparison of complete database tables. Additionally, the claim construction order imposes a locational requirement, such that Claim 15 stores complete database tables on two separate nodes. Also per that requirement, a comparison takes place locally on each of the two nodes, and an intermediate results file is generated from each comparison. Thus, the invention described in Claim 15 generates two intermediate results files, populated with data from comparisons of complete database tables on each of two separate nodes.

In contrast, the DATAllegro system generates only one intermediate results file. As discussed above, the DATAllegro system compares all complete database tables on only one node. While Claim 15 recites two comparisons, two nodes, and two intermediate results files, the DATAllegro system makes one comparison on one node, and generates only one intermediate results file. Therefore, the DATAllegro system does not generate "intermediate results files" in the same manner as described in Claim 15.

Accordingly, the Court **GRANTS** summary judgment of non-infringement in favor of Defendants with respect to this limitation of Claim 15.

### 3. "Join Table Definition" and "Join Table"

The dispute over this limitation turns on whether the DATAllegro system creates two join table definitions in response to a query command, as required by Claim 15. Defendants concede that the DSQL plan is one join table definition created in response to a query command. However, Claim 15 requires two such join table definitions. Plaintiff argues the second join table definition is created by the Ingres Database, which performs a "partition pruning" operation according to the customer's specification.

Both parties describe "partition pruning" as the removal, or "pruning," of portions of the database that are not relevant to the search request. Defendants' expert states in his declaration that partition pruning for a table is specified by the customer in a data definition, before any query commands are entered. [See Jew Decl. at ¶ 13.] That is, the Ingres database performs this operation based on a user-defined setting that is customized, or pre-defined, *before* query

commands are entered into the DATAllegro system. Therefore, definitions for the partition pruning operation are not created *in response to* a user query command.

The DATAllegro system only generates one join table definition in response to a user query command. Although the DATAllegro system's DSQL plan satisfies the first join table definition, the partition pruning operation does not satisfy the second. While the partition pruning command may create a join table, the actual join table definition used by the Ingres Database is predefined before any user query commands are entered. Therefore, the definition for the pruning operation is not created *in response to* a query command as required by Claim 15. Because the DATAllegro system only creates one join table definition in response to a query command, it does not perform the "join table definition" limitation in the same manner as Claim 15.

Accordingly, the Court **GRANTS** summary judgment of non-infringement in favor of Defendants with respect to this limitation of Claim 15.

### 4. Conclusion for Claim 15

Expert testimony, the Court's claim construction order, and the construction of "database tables," establish that the DATAllegro system does not perform the "comparing," "intermediate results files," or "join table definition" limitations of Claim 15. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment of non-infringement with regard to Claim 15.[3]

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment of non-infringement as to Claim 1 and Claim 15.

**IT IS SO ORDERED.**

DATED: 4/1/11

                                            *Irma E. Gonzalez*
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**

---

[3] Claims 16-21 are dependent upon Claim 15, and cannot be infringed without infringement of Claim 15. Thus, because Defendants do not infringe Claim 15, it follows that Defendants also do not infringe Claims 16-21.