# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARY A. JARDIN,<br><br>               Plaintiff,<br><br>vs.<br><br>DATALLEGRO, INC. and STUART FROST,<br><br>               Defendants. | **CASE NO: 08-CV-1462-IEG (WVG)**<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO STAY, DENY, OR RE-TAX CLERK'S TAXATION OF COSTS**<br><br>[Doc. No. 239] |

Presently before the Court is Plaintiff Cary A. Jardin's motion to stay, deny, or re-tax the Clerk's taxation of costs awarded to Defendants DATAllegro, Inc. and Stuart A. Frost, the prevailing parties in this action. [Doc. No. 239.] For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion.

## **BACKGROUND**

At the outset of this litigation, Plaintiff alleged certain products manufactured and sold by Defendant DATAllegro infringed U.S. Patent No. 7,177,874 (the "'874 patent").[1] Defendant Frost

---

[1] In a related action, Jardin asserts claims of full or partial inventorship or ownership of U.S. Patent Number 7,818,349 (the "'349 patent"), which lists Frost as the inventor and is currently owned by DATAllegro. *See* First Amended Complaint, *Jardin v. DATAllegro*, 10-cv-2552-IEG (WVG) (the "2010 case").

founded DATAllegro.  Microsoft Corporation acquired the company in 2008, and DATAllegro remains a wholly-owned subsidiary of Microsoft.  Microsoft, however, is not a party to this action.

With their answer, Defendants filed counterclaims seeking declaratory judgment of non-infringement, invalidity, and unenforceability of the '874 patent. [Doc. No. 44.]  On April 1, 2011, the Court granted Defendants' motion for summary judgment of non-infringement. [Doc. No. 191.]  On June 3, 2011, the Court granted Jardin's motion to dismiss Defendants' counterclaims. [Doc. No. 216.]  The Clerk entered judgment in favor of Defendants three days later. [Doc. No. 217.]

On June 30, 2011, Jardin filed a notice of appeal to the Federal Circuit. [Doc. No. 227.]  Jardin's appeal is currently pending.  *See Jardin v. DATAllegro*, No. 2011-1471 (Fed. Cir.).

Following the Clerk's entry of judgment, Defendants each submitted a Bill of Costs to the Clerk, seeking taxation of costs allowed under Federal Rule of Civil Procedure 54, 28 U.S.C. § 1920, and Civil Local Rule 54.1. [Doc. Nos. 220 (DATAllegro's Bill of Costs) & 221 (Frost's Bill of Costs).]  After conducting a telephonic hearing and receiving supplemental submissions from the parties, the Clerk taxed $55,726.49 in costs for DATAllegro and $78,448.34 for Frost. [Doc. Nos. 236, 237.]  In this motion, Jardin challenges the Clerk's award of costs, arguing that (1) no award of costs is appropriate in this case; (2) if an award of costs is appropriate, then the award granted by the Clerk should be substantially reduced; and (3) if an award of costs is appropriate, it should be stayed pending Jardin's appeal before the Federal Circuit.

## LEGAL STANDARD

"'Under the well-established Rule 54(d)(1) case law, the district court is charged with making a de novo review of the clerk's determination of the costs issue.'" *ASIS Internet Servs. v. Optin Global, Inc.*, No. C-05-5124 JCS, 2008 WL 5245931, at *3 (N.D. Cal. Dec. 17, 2008) (quoting *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 461 (3d Cir. 2000)).  "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1).  "Rule 54(d) creates a presumption in favor of awarding costs to prevailing parties, and it is incumbent upon the losing party to demonstrate why the costs should not be awarded."  *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1079 (9th Cir. 1999).

Rule 54(d) does not, however, authorize a court to award costs beyond those authorized by statute or contract. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-45 (1987). Thus, the court's discretion in awarding costs under Rule 54(d) is limited to awarding costs that are within the scope of 28 U.S.C. § 1920. *See Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 579 (9th Cir. 2010) (citing *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 86 (1991)); *Summit Tech., Inc. v. Nidek Co., Ltd.*, 435 F.3d 1371, 1374 (Fed. Cir. 2006). Section 1920 lists the following as taxable costs:

> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920; *see also* Civ. L.R. 54.1 (outlining specific items for which the Court customarily allows the award of costs "not otherwise allowed or prohibited by statute or by specific order"). "Although the Court is restricted in awarding costs to the categories enumerated in § 1920, '[d]istrict courts are free to interpret the meaning of the cast of categories listed within § 1920.'" *Tibble v. Edison Int'l*, No. CV 07-5359 SVW AGRX, 2011 WL 3759927, at *7 (C.D. Cal. Aug 22, 2011) (quoting *Taniguchi v. Kan Pacific Saipan, Ltd.*, 633 F.3d 1218, 1221 (9th Cir. 2011)). "'Once it is established that an item falls within 28 U.S.C. § 1920, the prevailing party is presumed to be entitled to recover costs, and the burden is on the losing party to show impropriety of an allowance.'" *Id.* (quoting *Cofield v. Crumpler*, 179 F.R.D. 510, 514 (E.D. Va. 1998)).

Because of Rule 54(d)'s presumption in favor of awarding costs to a prevailing party, "a district court need not give affirmative reasons for awarding costs; instead, it need only find that the reasons for denying costs are not sufficiently persuasive to overcome the presumption in favor of an award." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003). "The presumption itself provides all the reason a court needs for awarding costs, and when a district court states no reason for awarding costs, [the Ninth Circuit] will assume it acted based on that presumption." *Id.*

A court that declines to award costs, however, must justify its decision by explaining "why a case is not 'ordinary' and why, in the circumstances, it would be inappropriate or inequitable to award

costs." *Ass'n of Mexican-Am. Educators v. State of Cal.*, 231 F.3d 572, 593 (9th Cir. 2000) (en banc); *see Save Our Valley*, 335 F.3d at 945 ("A district court deviates from normal practice when it refuses to tax costs to the losing party, and that deviation triggers the requirement to 'specify reasons.'"). "Proper grounds for denying costs include (1) a losing party's limited financial resources; (2) misconduct by the prevailing party; and (3) the chilling effect of imposing . . . high costs on future civil rights litigants, as well as (4) whether the issues in the case were close and difficult; (5) whether the prevailing party's recovery was nominal or partial; (6) whether the losing party litigated in good faith; and (7) whether the case presented a landmark issue of national importance." *Quan v. Computer Sciences Corp.*, 623 F.3d 870, 888 (9th Cir. 2010) (quoting *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1022 (9th Cir. 2003) (omission in original) (internal quotation marks omitted)).

## DISCUSSION

**I.   Whether Costs Should Be Denied Entirely**

Jardin argues costs should be denied because (1) he litigated this action in good faith, (2) the issues in this case were close and difficult, and (3) there is a significant economic disparity between Microsoft and him. Even assuming all three of the factors to which Jardin points weigh in his favor, Jardin has not sufficiently rebutted Rule 54's presumption in favor of awarding costs.

No party has substantively asserted that Jardin did not pursue this action in good faith. But if this were sufficient to overcome Rule 54's presumption in favor of awarding costs, the "good faith" exception would swallow Rule 54's presumption.

In arguing that this action involved issues that were "close and difficult," Jardin makes much of a statement by the Court during the hearing on Defendants' motion for summary judgment of noninfringement, in which the Court acknowledged that understanding the technology at issue in this case required significant effort. [*See* Pl.'s Mot., at 4 (quoting Trans. of Mot. Hrg., at 78:1-6 (Mar. 14, 2011).] Unlike this case, however, the cases on which Jardin relies for this argument were not decided on summary judgment but involved long and complicated trials, and often turned on determinations of credibility related to conflicting testimony at trial. *See, e.g.*, *White & White, Inc. v. Am. Hosp. Supply Corp.*, 786 F.2d 728, 732 (6th Cir. 1986) ("Indeed, the matter consumed 80 trial days, required 43 witnesses, produced 800 exhibits, generated almost 15,000 pages of transcript, and begat a 95 page

opinion.""); *DLC Mgmt. Corp. v. Town of Hyde Park*, 45 F.Supp.2d 314, 316 (S.D.N.Y. 1999) (involving both a trial and an appeal); *Washburn v. Fagan*, No. C03-00869 MJJ, 2008 WL 361048, at *3 (N.D. Cal. Feb. 11, 2008) (involving a jury trial).

Finally, the economic disparity between Microsoft and Jardin does not justify denial of costs. First, Microsoft is not a party to this action. While DATAllegro is a wholly-owned subsidiary of Microsoft, Jardin has not provided a single authority suggesting that the Court should consider a nonparty parent company's finances when assessing costs in an action in which only a subsidiary company is a party. Nor does Jardin make a substantial effort to show that Microsoft's financial assets are particularly relevant in this case. Jardin merely points to the fact that Microsoft owns DATAllegro, and argues that DATAllegro's e-discovery invoices were addressed to Microsoft and that Microsoft Corporation "has a market cap of $226.17 *billion*." [Pl.'s Reply, at 6.] At oral argument, however, Frost's counsel clarified that the costs of discovery in this case were not paid by Microsoft, but out of an escrow account established when Microsoft acquired DATAllegro. Given the level of independence—financial and otherwise—many subsidiaries have from their parent corporations, Jardin has not sufficiently established that the Court should consider a nonparty parent corporation's finances.

Second, while a few courts assessing costs under Rule 54 have noted disparities between the financial resources available to opposing parties, they have done so in cases involving a party of limited financial resources. *See, e.g.*, *Ass'n of Mexican-Am. Educators*, 231 F.3d at 591, 593 (discussing the financial disparity between parties but also noting that the plaintiff was a nonprofit organization with limited resources); *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1038 (9th Cir. 2005) (affirming the district court's denial of costs where the district court had noted the "[losing party's] lack of financial resources and the substantial profit of the [prevailing party]"); *Rivera v. NIBCO*, 701 F.Supp.2d 1135, 1143-44 (E.D. Cal. 2010) (denying costs after noting, *inter alia*, that the plaintiffs were not indigent, but were low-wage workers with "limited financial resources," and then noting the substantial financial disparity between the plaintiffs and the defendant, the plaintiffs' employer and a multinational corporation); *Washburn*, 2008 WL 361048, at *2 (denying costs after noting that "while Plaintiff may have had access to sufficient funds to pay the appellate court's filing fee [and thus the court denied his IFP application], it would be incredibly

difficult, if not impossible, for Plaintiff to pay the $16,269.71 costs taxed to him in this action"). Therefore, to the extent a financial disparity among parties is a valid consideration, it appears to be so only where the party seeking to avoid costs has limited financial resources and thus payment of costs would present a significant hardship. *See Quan*, 623 F.3d at 888 (discussing the "[p]roper grounds for denying costs," and listing "a losing party's limited financial resources" but not financial disparities between parties) (quoting *Champion Produce, Inc.*, 342 F.3d at 1022).

Here, Jardin has not argued paying the costs in this case would be a financial hardship. To the contrary, he has painted himself as a "highly successful database architecture inventor" who "founded IPivot, Inc., a networking company, which was eventually sold to Intel for approximately $500 million." [Defs.' Opp'n, (quoting First Amended Complaint, *Jardin v. DATAllegro*, 10-cv-2552-IEG (WVG), at ¶ 9)[2]]; *see also Washburn*, 2008 WL 361048, at *2 n.4 ("[T]he burden is on the losing party to substantiate a claim of indigency." (citations omitted)). Moreover, Jardin has not argued that he—as opposed to his counsel, pursuant to a fee agreement—will have to pay the cost award himself. *Cf. Tibble*, 2011 WL 3759927, at *5 (finding a cost award would not likely have a chilling effect on future litigants where a fee arrangement provided that plaintiff's counsel, not the plaintiff, would be liable for costs).

Given the strong presumption in favor of awarding costs, Jardin has not established that this case was sufficiently extraordinary to justify denying costs entirely. Accordingly, Jardin's motion to deny costs is **DENIED**.

## II.     Whether the Court Should Reduce the Costs Taxed by the Clerk

The Clerk awarded a total of $134,174.83 in taxed costs to Defendants: $55,726.49 for DATAllegro, and $78,448.34 for Frost. Jardin challenges the validity of three sets of costs: (1) costs associated with converting large amounts of variously formatted electronic data ("e-data") into the .TIFF format, taxed under the umbrella of "exemplification costs" and awarded to both Defendants[3]

---

[2] Jardin's filings in the 2010 case are judicially noticeable. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("[A court] may take judicial notice of court filings and other matters of public record.").

[3] In his motion, Jardin argues that the Court should not allow Frost to recover the $58,817.98 awarded for "the processing of Mr. Frost's emails and other electronically stored documents to make

($5,477.98 to DATAllegro, and $58,817.98 to Frost); (2) costs of $5,950.00 awarded to DATAllegro for project management of its e-discovery; and (3) $1,200.20 of the $3,179.89 awarded to Frost for service costs.  Jardin has failed to show that any of the costs taxed by the Clerk are improper.

**A.  Costs for Converting Data to the .TIFF Format Are Recoverable**

.TIFF images are electronic copies of paper or electronic documents that were originally produced in other formats—*e.g.*, Microsoft Word, WordPerfect, Excel, PowerPoint, PDF, or various email formats.  Defendants explain that converting such files to .TIFF prevents the receiving side from altering the documents, enables Bates stamping, and protects the confidentiality of metadata associated with e-data.  [Defs.' Opp'n, at 6.]  ".TIFF is also the format most commonly used by document review software and was employed for Jardin's convenience."  [*Id.*]

Jardin argues that 28 U.S.C. § 1920 authorizes taxation of costs for "hard copies made and for making digital images of hard copies to be produced," but does not authorize "the conversion of [electronic] documents from one format to another."  [Pl.'s Mot., at 6, 8.]  Defendants, Jardin argues, could have produced e-data in its original format without incurring the conversion costs.  [*Id.*]

Under 28 U.S.C. § 1920(4), a prevailing party can recover "[f]ees for exemplification and the costs of making copies."  "'The terms "exemplification" and "copying" originated in and were developed in the world of paper.'"  *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, No. 2:07–cv–1294, 2011 WL 1748620, at *6 (W.D. Pa. May 6, 2011) (quoting *Kellogg Brown & Root Int'l v. Altanmia Commercial Mktg. Co., W.L.L.*, Civ. No. H–07–2684, 2009 WL 1457632, at *3 (N.D. Tex. 2009)).  Notably, however, and ostensibly in recognition of the growing dependency on electronic discovery in federal courts, Congress amended the text of § 1920(4) in 2008 from "[a] judge or clerk of

---

the data searchable by keywords"—that is, the conversion of Frost's e-data to the .TIFF format.  [*See* Pl.'s Mot., at 6.]  Without explanation, Jardin changed the nature of his challenge to Frost's exemplification costs in his reply and during the hearing on this motion, charging instead that "Mr. Frost seeks $58,817.98 for an e-discovery consultant," who analyzed and proposed solutions related to discovery strategy.  [Pl.'s Reply, at 2.]

Nothing in the record supports Jardin's new characterization of Frost's exemplification fees.  Through the invoices submitted to the Clerk, [Doc. No. 221-8], the declaration of Frost's counsel, [Doc. No. 221-2], Defendants' opposition to this motion, [Doc. No. 241, at 7-10], and Defendants' oral argument, Defendants have consistently described the services associated with Frost's exemplification fees as related to processing e-data and converting it to the .TIFF format for production.  The Court considers Frost's exemplification fees accordingly.

any court of the United States may tax as costs the following: . . . fees for exemplifications and copies *of papers*" to "fees for exemplification and the costs of making copies of *any materials*." Judicial Administration and Technical Amendments Act of 2008, Pub. L. No. 110–496, § 6, 122 Stat. 4291, S. 3596 (emphasis added). Since that amendment, "no court has categorically excluded e-discovery costs from allowable costs." *Race Tires Am.*, 2011 WL 1748620, at *6 n.6. And even before the amendment, "courts in many jurisdictions had come to recognize that 'exemplification,' in the modern era, includes electronic copying." *Id.* (collecting cases).

While § 1920 does not categorically exclude costs associated with e-discovery, federal courts are divided over whether converting e-data from one format into another is a valid exemplification cost. *See id.* at *6-8 (discussing this conflict and collecting cases); *Kellogg Brown & Root Int'l*, 2009 WL 1457632, at *4-6 (same); *CBT Flint Partners, LLC v. Return Path, Inc.*, 676 F. Supp. 2d 1376, 1381 (N.D. Ga. 2009) ("There is a division of opinion as to whether these costs are recoverable under 28 U.S.C. § 1920."), *rev'd on other grounds* --- F.3d ---, 2011 WL 3487023 (Fed. Cir. Aug. 10, 2011). The thrust of the debate is whether courts should view the conversion as something akin to "the 21st Century equivalent of making copies" or something more like "assembling records for production." *CBT Flint Partners*, 676 F. Supp. 2d at 1381; *see also Kellogg Brown & Root Int'l*, 2009 WL 1457632, at *4 (noting some courts have refused to award costs related to digital imaging of documents after finding the process to be "for the convenience of counsel and not 'necessary' for use in the case").

"We are well past the day when all copies are basic photocopies." *Adidas Am., Inc. v. Payless Shoesource, Inc.*, Nos. 01-1655-KI (Lead Case), CV 03-1116-KI, 2009 WL 302246, at *6 (D. Or. Feb. 9, 2009). The Federal Rules of Civil Procedure *require* parties to produce electronically stored information unless they can "show that the information is not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B); *see id.* Advisory Comm. Note to 2006 Amendment. Because e-data may be created and stored in many different formats—often incompatible with one another or requiring individual licenses to access data—converting data into a format that all parties can utilize not only allows for more efficient and less expensive discovery, but is often necessary for any meaningful discovery at all. The processes required to properly preserve, restore, retrieve, or convert e-data so that it may be produced in discovery are "highly technical" and substantially

different from "the types of services that attorneys or paralegals are trained for or are capable of providing."  *See CBT Flint Partners*, 676 F. Supp. 2d at 1381; *see also Tibble*, 2011 WL 3759927, *7 (holding costs for an e-discovery expert were "necessarily incurred in responding to plaintiffs' discovery requests," where, *inter alia*, the plaintiffs "aggressively sought electronic files, whether active, deleted, fragmented, or stored on electronic media or network drives").  Thus, a categorical rule prohibiting costs for converting data into an accessible, readable, and searchable format would ignore the practical realities of discovery in modern litigation.  Therefore, where the circumstances of a particular case necessitate converting e-data from various native formats to the .TIFF or another format accessible to all parties, costs stemming from the process of that conversion are taxable exemplification costs under 28 U.S.C. § 1920(4).  *See Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009) (affirming the district court's award of costs for "document processing" and holding that costs for "converting computer data into a readable format in response to plaintiffs' discovery requests . . . are recoverable under 28 U.S.C. § 1920"); *BDT Products, Inc. v. Lexmark Intern., Inc.*, 405 F.3d 415, 420 (6th Cir. 2005) (affirming the district court's award of costs for electronic scanning and imaging).

Converting data to the .TIFF format was a necessary part of discovery in this case.  The information sought in discovery included massive amounts of e-data stored in various digital formats, including email files, attached documents, and data in several formats that require special software and proprietary licenses in order to gain access.  *See, e.g.*, *CBT Flint Partners*, 676 F. Supp. 2d at 1380-81 (approving costs for a consultant who helped "collect, search, identify and help produce electronic documents" where the "production in paper form of the 1.4 million documents plus 6 versions of source code would have cost far more than the fees sought for the e-discovery consultant"); *Race Tires Am.*, 2011 WL 1748620, at *6 (approving costs incurred by "engage[ing] computer experts to forensically collect and image hard drives, scan documents to create electronic images, process and index electronic discovery data, extract the required metadata fields from electronic records, enable documents to be OCR searchable, *and convert documents to the required .tif format*" (emphasis added)); *Adidas Am.*, 2009 WL 302246, at *6 (approving costs incurred by converting documents and e-data to the .TIFF format); *Avila v. Willits Env't*, No. C 99-03941 SI, 2009 WL 4254367, at *3 (N.D.

1  Cal. Nov. 24, 2009) (awarding costs "for scanning expert disclosure documents, converting them to a
2  TIFF or PDF, and uploading them to CDs for production"), *vacated after reversal on other grounds in*
3  633 F.3d 828 (9th Cir. 2011).  Additionally, Defendants did not seek duplicative costs for conventional
4  photocopying; rather, the "electronic conversion was '*in lieu* of making conventional copies.'"  *Avila*,
5  2009 WL 4254361, at *3 (quoting *MEMC Elec. Materials v. Mitsubishi Materials*, No. C-01-4925,
6  2004 WL 5361246, at *11 (N.D. Cal. Oct. 22, 2004)).  Furthermore, as Jardin's counsel stated during
7  the hearing on this motion, the parties agreed to produce documents electronically in the .TIFF format
8  because the .TIFF conversion made discovery easier, more efficient, and less expensive for all parties.
9  *See, e.g.*, *Cargill Inc. v. Canbra Foods, Ltd.*, No. CV 03-1209-MO, 2007 WL 2840396, at *1 (D. Or.
10 Sept. 27, 2007) (awarding conversion costs due to "the complex nature of this case and the parties'
11 agreement to produce documents electronically in TIFF format"); *see also Race Tires Am.*, 2011 WL
12 1748620, at *6 ("[C]ourts have allowed a prevailing party to recover the costs of converting paper
13 documents into electronic files where the parties agreed that responsive documents would be produced
14 in an electronic format." (collecting cases)).  Finally, Defendants seek only those costs stemming from
15 the conversion process itself; neither DATAllegro nor Frost seeks "reimbursement for any legal fees
16 charged by the attorneys and/or paralegals who reviewed documents to determine responsiveness,
17 privilege, and confidentiality designations for the processed documents."  *Race Tires Am.*, 2011 WL
18 1748620, at *6.
19      Thus, Jardin's motion to re-tax costs awarded to Defendants for converting data to the .TIFF
20 format is **DENIED**.
21      **B. DATAllegro's Costs for "Project Management" of the .TIFF Conversion Are Recoverable**
22      Of the $38,722.58 the Clerk awarded DATAllegro for exemplification fees, $20,576.00 was
23 awarded for time billed for technicians to work on DATAllegro's e-discovery; and $5,950.00 was
24 awarded for management of its e-discovery projects.  Jardin argues costs associated with a "project
25 manager" are not taxable because they relate to the "intellectual effort involved in [document]
26 production," and are thus not recoverable.  [*Id.* (quoting *Gabriel Techs. Corp. v. Qualcomm Inc.*, No.
27 08-cv-1992 MMA (POR), 2010 WL 3718848, at *11 (S.D. Cal. Sept. 20, 2010)).]  DATAllegro argues
28 the project manager's duties related exclusively to the process of converting data to the .TIFF format.

Under § 1920(4), "fees are permitted only for the physical preparation and duplication of documents, not the intellectual effort involved in their production." *Romero v. Pomona*, 883 F.2d 1418, 1428 (9th Cir. 1989), *overruled in part on other grounds in Townsend v. Holman Consulting Corp.*, 914 F.2d 1136, 1141 (9th Cir. 1990); *see Gabriel Techs.*, 2010 WL 3718848, at *11 (quoting *Zuill v. Shanahan*, 80 F.3d 1366, 1371 (9th Cir. 1996)). The distinction between the "physical production" versus "intellectual effort" is that costs associated with physically replicating or producing documents or data are recoverable under § 1920(4), while costs arising out of discovery-related activities tied to strategic, confidentiality, or other types of concerns typically entrusted to lawyers involve intellectual effort and are not recoverable. *See Romero*, 883 F.2d at 1427-28 (affirming the district court's denial of costs associated with "fees paid to the experts who assembled, analyzed and distilled the data incorporated into their trial exhibits"); *Summit Tech., Inc. v. Nidek Co., Ltd.*, 435 F.3d 1371, 1377-78 n.5 (Fed. Cir. 2006) (affirming the district court's denial of costs related to consultants who worked on "tasks ranging from 'animation' to 'client planning meetings,'" noting that such "work amounts to trial preparation and strategizing, and is not akin to the cost of photocopying a piece of paper, a cost that section 1920 explicitly contemplates"); *Competitive Techs. v. Fujitsu Ltd.*, No. C-02-1673 JCS, 2006 WL 6338914, at *9 (N.D. Cal. Aug. 23, 2006) (distinguishing *Romero*, and awarding costs for Bates stamping documents before production, on the grounds that "[e]xpert research is not the same as Bates stamping, which the Court determines is an aspect of the physical preparation or duplication of documents").

In arguing that the project management costs here are not recoverable, Jardin relies heavily on *Gabriel Technologies*. In *Gabriel Technologies*, the district court held that a consultant hired at a fee of $1.5 million to "review and manage Defendants' electronic documents to respond to Plaintiffs' broad discovery requests" engaged in intellectual effort related to discovery. 2010 WL 3718848, at *10-11. Thus, the costs of the consultant in *Gabriel Technologies*, who performed discovery-related tasks usually performed by lawyers, were not recoverable. *See id.*; *see also Klayman v. Freedom's Watch, Inc.*, 2008 WL 5111293, at *2 (S.D. Fla. Dec. 4, 2008) (rejecting costs for third-party experts hired at "a huge hourly cost to search for and retrieve discoverable electronic documents," which, "[i]n a non-electronic document case[,] . . . would be performed by paralegals and associate attorneys and

would not be compensable as costs under 28 U.S.C. § 1920"). But where, unlike *Gabriel*, a third-party technician is engaged to perform duties limited to technical issues related to the physical production of information, related costs are recoverable under § 1920. *See, e.g.*, *Hynix Semiconductor Inc. v. Rambus Inc.*, 697 F. Supp. 2d 1139, 1150-51 (N.D. Cal. 2010); *CBT Flint Partners*, 676 F. Supp. 2d at 1381 (approving costs for a third-party consultant's services related to the collection, identification, and preparation of e-data for production, noting that such "services are highly technical" and "certainly necessary in the electronic age"); *Tibble*, 2011 WL 3759927, at **6-7 ("[C]osts associated with the technical expertise required to unearth electronically stored information are [recoverable.]").

Here, the project manager did not review documents or contribute to any strategic decision-making; he oversaw the process of converting data to the .TIFF format to prevent inconsistent or duplicative processing. [Defs.' Opp'n, at 7.] Because the project manager's duties were limited to the physical production of data, the related costs are recoverable. Accordingly, the Court **DENIES** Jardin's motion to re-tax costs awarded to DATAllegro for its e-discovery project manager.

### C. Frost's Costs for Failed Service Attempts Are Recoverable

Jardin complains that $1,200.20 of the $3,179.89 awarded to Frost for service costs stem from multiple failed attempts to serve subpoenas. Frost's proffered reasons for failed service attempts included "no longer works here" and "subject out of town." [Pl.'s Mot., at 7.] Without providing any authority, Jardin argues that he "should not be responsible for Mr. Frost's inability to locate a witness or determine that witness's current employer." [*Id.*] Jardin also argues that Frost failed to explain the relevance of subpoenas to D. Downs, S. Topper, IBM, or four subpoenas to Wireache, Inc. [*Id.*]

In their opposition, Defendants explain that Messrs. Downs and Topper were officers of XPrime, the company Jardin founded and where he and Frost were working when Frost allegedly copied Jardin's invention. Wireache is a successor to a company called NextGig, where Jardin began developing his alleged invention. IBM developed technology that Defendants believed to be prior art to Jardin's patent. [Defs.' Opp'n, at 10-11.] "Frost's service of subpoenas to all of these persons and companies resulted in the production of material documents." [*Id.* at 11.]

Attempted service at more than one address is a normal and often necessary part of eventually serving a subpoena successfully, and associated costs are recoverable. *See Campbell v. Nat'l*

*Passenger R.R. Corp.*, 718 F. Supp. 2d 1993, 1106 (N.D. Cal. 2010) (awarding costs related to "attempted service of process"); *Banga v. First USA, NA*, No. C 10-0975 SBA, 2011 WL 941167, at *3 (N.D. Cal. Mar. 16, 2011) (awarding costs for "attempts to serve a deposition subpoena"); *cf. Shum v. Intel Corp.*, 682 F. Supp. 2d 992, 1001-02 (N.D. Cal. 2009) ("[T]he physical presence of a witness at trial is not necessary to recover a subpoenaed witness's costs 'when it was reasonably expected that [the witness's] attendance would be necessary and he had held himself in readiness to attend.'" (quoting *Spanish Action Comm. v. Chicago*, 811 F.2d 1129, 1138 (7th Cir. 1987))).  Accordingly, the Court **DENIES** Jardin's motion to reduce the costs associated with Frost's service attempts.

### III.     Whether the Award of Costs Should Be Stayed

Jardin argues the Court should stay costs until after disposition of his appeal, because a reversal by the Federal Circuit could change the "prevailing party" in this matter, and thus which party is entitled to costs. [Pl.'s Mot., at 4-5.]  Jardin also argues the Court should not require him to post a supersedeas bond under Rule 62, because Jardin has "already taken his case up on appeal to the Federal Circuit," and because this Court continues to have "jurisdiction over the parties" based on their continuing litigation in the 2010 case. [*Id.*]  Defendants argue they will be prejudiced if costs are stayed, but, at a minimum, Jardin should be required to post a bond in the amount of the costs awarded.

Rule 62(d) provides that an appealing party may obtain a stay of judgment by supersedeas bond. *See, e.g.*, *Bemo USA Corp. v. Jake's Crane, Rigging & Transport Intern. Inc.*, 2010 WL 4604496, at *1 (D. Nev. Nov. 5, 2010) ("To stay the execution of a judgment pending appeal, ordinarily the appellant must furnish a proper supersedeas bond.").  "'The purpose of the supersedeas bond is to preserve the status quo while protecting the non-appealing party's rights pending appeal.'" *Id.* (citing *Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190-91 (9th Cir. 1979)).  An appellant is only entitled to waiver of a bond and a discretionary stay in "extraordinary cases." *Id.*  The party seeking a waiver "carries the burden to show that relief from the bond requirement is justified." *Hines*, 2010 WL 3565498, at *1 (requiring bond where the plaintiff failed to show that she was unable to pay).  Generally, "a waiver should be granted only 'if the filing of a supersedeas bond would irreparably harm the judgment debtor and, at the same time, such a stay would not unduly endanger the judgment creditor's interest in ultimate recovery.'" *Bemo*, 2010 WL

13

4606696, at *1.  Even upon "waiving the full supersedeas requirement, courts 'often require alternative security considerably in excess of the amount of the judgment.'"  *Id.*; *see also Poplar Grove*, 600 F.2d at 1191 (even if "an undue financial burden" is shown, the court may require a different form of security).

Jardin is correct that a reversal on appeal may also reverse the "prevailing party."  However, he has not provided sufficient justification for waiving Rule 62's bond requirement.  Accordingly, the Court **GRANTS** Jardin's motion to stay execution of judgment, conditioned upon his posting a supersedeas bond for $134,174.83—the full amount of costs taxed by the Clerk.  [*See* Doc. Nos. 236 & 237.]

## CONCLUSION

For the reasons stated above, Plaintiff's motion to stay, deny, or re-tax the Clerk's taxation of costs awarded to Defendants DATAllegro, Inc. and Stuart A. Frost is **GRANTED IN PART** and **DENIED IN PART**.  [Doc. No. 239.]

1. Plaintiff's motion to deny all costs is **DENIED**.
2. Plaintiff's motion to re-tax the costs awarded by the Clerk is **DENIED**.
3. Plaintiff's motion to stay execution of judgment pending appeal is **GRANTED**, but only on the condition that Plaintiff post a supersedeas bond in the amount of $134,174.83 no later than 14 days from the filing date of this Order.

**IT IS SO ORDERED.**

DATED: October 12, 2011

_____
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**